Debra **MURRAY** and Annadine Houle, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Richard E. **LYNG**[1] in his capacity as Secretary of the United States Department of Agriculture, and Leonard Levine, in his capacity as Commissioner of the Minnesota Department of Human Services, Defendants.

Civil 4–85–611.

United States District Court, D. Minnesota.

May 19, 1987.

1. Secretary Lyng, John Block's successor, was appointed during the pendency of this litigation

James E. Wilkinson, The Legal Aid Society of Minneapolis, Inc., and Laurie N. Davison, Minneapolis, Minn., appeared on behalf of plaintiffs.

Elissa G. Mautner, Asst. U.S. Atty., Minneapolis, Minn., appeared on behalf of defendant Richard E. Lyng.

Patricia A. Sonnenberg, Sp. Asst. Atty. Gen., St. Paul, Minn., appeared on behalf of defendant Leonard Levine, but did not participate in the proceedings.

and is substituted as defendant. Fed.R.Civ.P. 25(d)(1).

**2.** On July 18, 1985, United States Magistrate Floyd E. Boline granted defendant Levine's motion to be designated as a nominal party on the ground that Levine is merely implementing the

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiffs Debra Murray and Annadine Houle brought this action on behalf of themselves and a class of Minnesota foster parents and food stamp recipients against defendant Richard E. Lyng, as Secretary of the United States Department of Agriculture (the "Secretary"), and defendant Leonard Levine, as Commissioner of the Minnesota Department of Human Services.[2] Plaintiffs challenge regulations of the United States Department of Agriculture that require foster children to be included in their food stamp "households" and foster care maintenance payments to be included as unearned income in their food stamp "income." 7 C.F.R. §§ 273.1, 273.9(b)(2)(ii). These regulations allegedly reduce plaintiffs' food stamp allotments. Plaintiffs' first three causes of action allege that the household and income regulations are not reasonable constructions of provisions of the Food Stamp Act. 7 U.S.C. §§ 2014(d)(6), (5), and (9). Plaintiffs' fourth cause of action alleges that the regulations violate their right to due process by creating an irrebutable presumption that the amount of foster care payments exceeds the cost of providing that care. Finally, plaintiffs allege that the regulations violate their right to equal protection by providing foster child households with fewer food stamps than otherwise similar households not providing foster child care.

Plaintiffs seek a declaratory judgment that the regulations violate the Food Stamp Act and the Constitution, injunctive relief prohibiting defendants from continuing to enforce the regulations, and injunctive relief requiring defendants to restore to plaintiffs the food stamps they would have received since April 1984 absent the regulations. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.

Secretary's regulations. As a nominal party, Levine is not required to defend the action or file responsive pleadings; he remains a party for the purposes of discovery or any remedial order.

The court has previously denied the Secretary's motion to dismiss and granted plaintiffs' uncontested motion for class certification. Now before the court are cross motions for summary judgment.[3]

*Background*

Plaintiffs Debra Murray and Annadine Houle are licensed foster parents who provide care for foster children placed in their homes by the Hennepin County Bureau of Social Services.[4] They each receive monthly foster care maintenance payments to cover the costs of providing for their respective foster children. In addition, they each receive, or have received, food stamp allotments. They allege that these allotments would have been greater had the Secretary's regulations not included the foster children in their food stamp "households" and the foster care maintenance payments in their income.[5] Plaintiffs Murray and Houle are the named representatives of a class defined as "all persons in Minnesota whose Food Stamp benefits have been reduced, terminated or denied from May 1, 1984 onwards as a result of their receipt of foster care maintenance payments."

### A. The Food Stamp Act

In passing the Food Stamp Act, 7 U.S.C. §§ 2011–2029, Congress sought to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. Under the Act, the states administer the food stamp program in accordance with federal statutes and regulations. 7 U.S.C. § 2020. The federal government provides the entire funding for the cost of the benefits and for at least 50 percent of each state's administrative costs. 7 U.S.C. §§ 2013, 2025.

Food stamps are distributed on a household basis. The Act defines a "household" as:

(1) an individual who lives alone or who, while living with others, customarily purchases food and prepares meals for home consumption separate and apart from the others, or (2) a group of individuals who live together and customarily purchase food and prepare meals together for home consumption; except that parents and children, or siblings, who live together shall be treated as a group of individuals who customarily purchase and prepare meals together for home consumption even if they do not do so, unless one of the parents, or siblings, is an elderly or disabled member.

7 U.S.C. § 2012(i). The Minnesota Department of Human Services Food Stamp Manual utilizes a similar definition. § III–C.

In 1978, the Secretary promulgated a regulation under the statute which provided that "[i]n no event shall nonhousehold member status ... be granted to [c]hildren under 18 years of age under the parental control of an adult member of the household." 7 C.F.R. § 273.1(a)(3)(ii) [the "household" regulation]. This regulation was recently amended to provide that "[c]hildren under 18 years of age under the parental control of an adult household member [living with others] shall be con-

---

3. The court granted the St. Paul American Indian Center's motion to appear as amicus curiae; the center has submitted a brief urging the court to grant plaintiffs' motion.

4. Murray and Houle are members of the Minnesota Chippewa Tribe and the Turtle Mountain Chippewa Tribe, respectively. According to amicus St. Paul American Indian Center, the legislative history of the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963, indicates that Congress intended to insure "same-culture" placement of Indian foster children. Amicus contends that the Secretary's regulations impede the achievement of that policy by effectively penalizing low-income Indian families that accept foster children.

5. For example, in April 1985, Murray received $58 in food stamps and Houle received $34 in food stamps. Had their foster children and the foster care maintenance payments been excluded from their food stamp calculations, Murray would have received $159 more in food stamps and Houle would have received $30 more. The Secretary does not appear to dispute these assertions. Instead, the Secretary notes that food stamp allotments are adjusted to take account of economies of scale, which results in larger households receiving less in per capita benefits than smaller households. 7 U.S.C. § 2012(*o*)(1).

sidered as customarily purchasing food and preparing meals together, even if they do not do so." 7 C.F.R. § 273.1(a)(2)(i)(B). The Secretary interprets the regulation to require the inclusion of foster children in the foster parent's food stamp household.

The Food Stamp Act defines "[h]ousehold income for purposes of the food stamp program" as:

all income from whatever source excluding only ... (5) reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household ... (6) moneys received and used for the care and maintenance of a third-party beneficiary who is not a household member ... (9) the cost of producing self-employed income....

7 U.S.C. § 2014(d). These three exclusions from household income form the basis for plaintiffs' first three causes of action. The Secretary has promulgated a regulation under this statute which includes "foster care payments for children or adults" as unearned income. 7 C.F.R. § 273.9(b)(2)(ii) [the "income" regulation]. Minnesota also defines unearned income to include foster care payments. Minnesota Department of Human Services Food Stamp Manual § V–E–1(i).

**B.** *Adoption Assistance and Child Welfare Act*

The Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 670–679a, provides federal financial assistance to the states in providing foster care and adoption assistance to children. With this financial support, state programs make "foster care maintenance payments" to children who meet the statutory requirements. The Act defines such payments as "payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation." 42 U.S.C. § 675(4). Along with payments from state funds, Minn.Stat. § 256.82, the Act provides financial support for foster care in Minnesota.

*Discussion*

Both parties have moved for summary judgment, thus effectively agreeing that no genuine issues of material fact remain. The parties disagree, however, as to which side is entitled to judgment as a matter of law.[6] Plaintiffs' complaint asserts three statutory and two constitutional causes of action. Plaintiffs' statutory arguments should be considered first to avoid needless constitutional adjudication, if possible. *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

Analysis of the issue should start with the statute. "An agency's construction of a statute under its enforcement jurisdiction is generally accorded deference if the construction 'has a reasonable basis in law and is consistent with the congressional policy behind the statute.'" *Gorrie v. Bowen,* 809 F.2d 508, 516 (8th Cir.1987) (quoting *International Nutrition, Inc. v. United States Department of Health and Human Services,* 676 F.2d 338, 342 (8th Cir.1982)); *see also Chevron U.S.A., Inc. v. Natural*

---

**6.** Although no court has yet ruled on a challenge to these regulations, a similar statutory challenge is pending in the District of Vermont. In *Foster v. Celani,* No. 85–320 (D.Vt.1987), United States Magistrate Jerome J. Niedermeier issued a Report and Recommendation recommending that plaintiffs' motion for summary judgment be granted. Magistrate Niedermeier determined that foster children are members of the household, but concluded that foster care maintenance payments should be excluded from income as "reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household." 7 U.S.C. § 2014(d)(5). On this basis, Magistrate Niedermeier ruled that the Secretary's regula-

tions violate the Food Stamp Act. The Secretary filed objections to the Report and Recommendation. United States District Judge Albert W. Coffrin apparently has not yet issued a ruling.

Plaintiffs here argue that the Report and Recommendation supports their position. Magistrate Niedermeier would include foster children in the household, thus making them eligible to receive food stamps. However, the Magistrate would not allow the Secretary to consider foster care maintenance payments, which are partially for food, in calculating the family's food stamp allotment on behalf of the child. It is questionable whether Congress would have intended such a result.

*Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). This deference has limits, however. "[C]ourts are the final authorities on such issues of statutory construction [and] remain free to set aside an agency's construction of a statute if it does not have a reasonable basis in law or if it frustrates congressional policy." *Metropolitan Medical Center & Extended Care Facility v. Harris,* 693 F.2d 775, 780 (8th Cir.1982) (citation omitted); *see also Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979).

Plaintiffs argue that foster care payments should not be considered to be part of their income for the purposes of calculating food stamp allotments because the payments are for the "care and maintenance of a third party beneficiary, who is not a household member," and therefore should be excluded under 7 U.S.C. § 2014(d)(6). According to plaintiffs, foster children are not household members, but rather, are properly classified as "boarders" because they reside with others and pay compensation for lodging and meals. 7 U.S.C. § 2012(i); 7 C.F.R. § 273.-1(c)(1).

The Secretary responds that the third-party beneficiary exclusion is inapplicable to foster children. According to the Secretary, foster children and foster families are likely to "purchase food and prepare meals together," thereby constituting a household under the statutory definition. As a result, foster children are members of the household and therefore cannot be third-party beneficiaries who, according to the statute, are not household members. In addition, the Secretary argues that treating foster children as household members is consistent with the purpose of providing foster care, which is to provide substitute family care. The Secretary also asserts that this treatment is consistent with the intent of Congress in amending the household definition statute in 1981 and 1982 to prevent related persons from becoming separate households in order to receive higher per-person benefits. This rationale, according to the Secretary, supports treating foster children as members of the household because otherwise the family and the child could receive higher per-person benefits by posing as separate households. Finally, the Secretary contends that foster children cannot be considered as boarders under the statute because the government, rather than the children, pay the foster parents for meals and lodging.

A review of the history of the statutory household definition is necessary in order to determine whether the Secretary's regulations are consistent with the congressional policy behind the Food Stamp Act. As originally enacted in 1964, the Act defined a "household" as "a group of related or non-related individuals, who are not residents of an institution or boarding house, but are living as one economic unit sharing common cooking facilities and for whom food is customarily purchased in common." Food Stamp Act of 1964, Pub.L. No. 88-525, § 3(e), 78 Stat. 703. In 1971, Congress amended the household definition to include foster children by defining a household as "a group of related individuals (including legally adopted children and legally assigned foster children) or non-related individuals over age 60 who are not residents of an institution or boarding house, but are living as one economic unit sharing common cooking facilities and for whom food is customarily purchased in common." Pub.L. No. 91-671, § 2(a), 84 Stat. 2048 (1971). In *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), the Supreme Court held that this definition violated the due process clause of the Fifth Amendment by irrationally differentiating between related and non-related individuals. In the Food and Agriculture Act of 1977, Pub.L. No. 95-113, § 1301, 91 Stat. 913, 960, Congress remedied the constitutional deficiency by removing the relation distinction from the definition. The 1977 Act also removed any explicit reference to foster children. The current statutory definition is in large part based on the 1977 amendment.

In 1981, Congress amended the definition to provide, in relevant part, that "parents

and children who live together shall be treated as a group of individuals who customarily purchase and prepare meals together for home consumption even if they do not do so...." Omnibus Budget Reconciliation Act of 1981, § 101(1), Pub.L. No. 97–35, 95 Stat. 357, 358. The following year, Congress amended the clause to include siblings as well. Omnibus Budget Reconciliation Act of 1982, § 142, Pub. L. No. 97–253, 96 Stat. 763, 772. Under these amendments, parents, children, and siblings who live together are necessarily treated as members of one household. In *Lyng v. Castillo*, 477 U.S. 635, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986), the Supreme Court considered an equal protection challenge to the added language, and upheld the provision under the rational basis test. The Court found that Congress could have rationally concluded that close relatives in a household generally share meals, thus creating greater "potential for mistaken or misstated claims of separate dining" relative to persons with "weaker communal ties." *Id.* at 2731–32.

The current statutory household definition, which does not explicitly refer to foster children, focuses on the purchase of food and the preparation of meals for home consumption—persons who customarily conduct these activities together generally constitute a household. 7 U.S.C. § 2012(i). Congress did not intend that all such persons necessarily be members of the household, however. The current statute provides that persons who "live with others and pay compensation to the others for meals" cannot constitute a household. 7 U.S.C. § 2012(i). The House report to the 1977 amendments to the Act indicates that such persons are "boarders." H.R.Rep. No. 464, 95th Cong., 1st Sess. 143, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1978, 2113. That report also states that "live-in attendants" are not members of the household, even though they customarily purchase food and prepare meals with the member or members of the household. In explaining this exception, the report noted that such persons "do not, in the more traditional sense, 'live together' with the persons they are in attendance upon...."

*Id.* These exceptions appear to reflect the recognition by Congress that a financial relationship of some sort between persons who would otherwise constitute a household may remove such persons from inclusion in the household. Such persons "do not, in the more traditional sense, 'live together' with [the remainder of the household]."

The Secretary has adopted these exceptions to the household definition in regulations. 7 C.F.R. § 273.1(b)(1)(ii) (excluding live-in attendants); 7 C.F.R. § 273.1(c) (including boarders only at request of household). The Secretary thus recognizes that the congressional focus on food purchase and meal preparation is not absolute. The Secretary contends, however, that foster children cannot be classified as boarders.

Congress has not explicitly indicated whether it considered foster children to be household members or boarders, either in the statute itself or in the reports accompanying the Act. In reviewing the history of the household definition, it is significant that foster children were explicitly included in the definition by the 1971 amendments, indicating congressional recognition of the foster child issue. In its 1977 amendments to the Act, however, Congress removed foster children from the household definition. The Supreme Court's decision in *Moreno* required Congress to remove the relatedness classification from the definition, but Congress acted independently in removing foster children from the definition. Unfortunately, Congress did not set forth its reasons for doing so. Nonetheless, the removal itself suggests that Congress did not intend foster children to be included in the food stamp household.

In determining whether foster children should be considered to be boarders, the nature of foster care arrangements is relevant. As discussed above, Congress saw fit to exclude boarders and live-in attendants—persons with financial relationships with the household and who do not live with the household in the "traditional sense"—from the household definition. Foster care arrangements should be viewed in the context of those factors.

Foster care arrangements share a number of common characteristics with arrangements concerning boarders and live-in attendants. Foster care arrangements have a significant financial element—the State of Minnesota makes payments to foster parents to cover the costs of providing care to foster children. As with boarders and live-in attendants, foster children appear not to live with their foster parents in the "traditional sense" insofar as the state plays a prominent role in regulating the relationship.[7] Defendant Levine's answers to interrogatories indicate that foster care arrangements are of a relatively temporary nature. In 1984, the median stay for children in substitute care was 14.45 months.[8] Approximately 46 percent of the children in substitute care that year were in the placement for less than one year, and about 76 percent of such children had been in placements for less than three years. Substitute care placements are also changed relatively frequently—approximately 30 percent of children in substitute care had two or more placements in 1984.

The financial component of the foster care relationship, the extensive state regulation of the relationship, and the relatively temporary nature of the relationship all indicate that foster children do not live with their foster parents in the "traditional sense." Foster children thus appear to be more "like" boarders than "like" household members. As nonhousehold members, they may be "third-party beneficiaries." Foster care maintenance payments should therefore be excluded from the household's income for the purposes of determining food stamp eligibility under 7 U.S.C. § 2014(d)(6).[9] These factors, together with the congressional removal of foster children from the definition of "household," indicate that the Secretary's regulations including foster children in the food stamp household, and their income in the household's income, do not have a reasonable basis in law and are not consistent with the congressional policy behind the statute.[10] The regulations therefore violate the Food Stamp Act.

The Secretary's argument that foster children are unlike boarders because they do not directly make the payments for their food and lodging is unpersuasive. Apparently, the Secretary would consider foster children to be more like boarders if the state were to make payments directly to them and they in turn transferred the funds to their foster parents. It is unlikely that Congress intended the form of the

7. According to admissions by defendant Levine, the state regulates the relationship in the following ways: the homes of foster parents are subject to inspection by state and county agencies; foster parents have no authority to request the placement of a child or to block a child's removal; foster parents may not independently authorize medical treatment for the child; foster parents may not dictate a religious preference for the child; foster parents may not refuse to comply with a reasonable visitation schedule for the child's natural parents; and foster parents have no authority over the child's property. Defendant Levine's admissions indicate that this is an incomplete list of the ways in which the state regulates the foster care relationship. Affidavit of James E. Wilkinson, Exhibit L.

8. "Substitute care" includes the placement of children in group homes and residential treatment programs as well as in foster care placements.

9. Foster care maintenance payments also appear to be excludable as "reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household" under 7 U.S.C. § 2014(d)(5). The Secretary essentially concedes that foster care maintenance payments are reimbursements, but asserts that the exclusion is inapplicable because foster children are, in his view, members of the household. In view of the court's ruling that foster children are not household members, the reimbursements provision also excludes foster care maintenance payments from income. The court need not consider plaintiffs' final statutory cause of action concerning the exclusion for the cost of producing self-employed income.

10. Although not determinative of the issue before the court, the Secretary's regulations also appear to be inconsistent with the recent enactment by Congress excluding foster children and foster care maintenance payments for the purpose of calculating Aid to Families with Dependent Children benefits for foster families. Tax Reform Act of 1986, § 1883(b)(10), Pub.L. No. 99–514, 100 Stat. 2917 (codified at 42 U.S.C. § 678).

transfer to determine the substantive treatment of the relationship.[11]

The Supreme Court's decision in *Lyng v. Castillo,* 477 U.S. 635, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986), does not support the Secretary's position. The Supreme Court's reference to "close relatives," *id.* at 2731, suggests that the requirement that "parents and children, or siblings" be included in one household does not apply to foster children. 7 U.S.C. § 2012(i). Furthermore, the congressional policy of preventing the creation of additional "households" in order to increase per-capita benefits is not relevant here. Because they are like boarders, foster children are not independently eligible for food stamps, and therefore cannot form a separate household.

The Secretary's reliance on the Court of Appeals' recent decision in *Gorrie v. Bowen,* 809 F.2d 508 (8th Cir.1987), is also misplaced. In *Gorrie,* the Court upheld a regulation that required the inclusion of all coresident siblings and their financial resources in applications for Aid to Families with Dependent Children. In so holding, the Court relied upon the "plain language" of the statute enacted by Congress in 1984. *Id.* at 514. Here, by contrast, the language of the statute does not indicate whether Congress intended foster children to be included in food stamp households. As a result, the Secretary's regulations require scrutiny with respect to the congressional policy behind the statute, a test the present regulations cannot withstand.

Since the Secretary's regulations violate the Food Stamp Act,[12] plaintiffs' motion for summary judgment should be granted. Plaintiffs are entitled to a declaratory judgment and to prospective injunctive relief. The exact form of any retrospective relief sought by plaintiffs is unclear, however, and the parties have not addressed the issue of the Eleventh Amendment's possible application to the State of Minnesota's involvement in such relief. *See, e.g., Col-*

*beth v. Wilson,* 554 F.Supp. 539, 545 (D.Vt. 1982), *aff'd sub nom. Colbeth v. O'Rourke,* 707 F.2d 57 (2d Cir.1983). As a result, retrospective relief should not be granted at this time.

Accordingly, based on the above and all the files, records, and proceedings here, it is hereby ordered that:

1. Plaintiffs' motion for summary judgment is granted, and 7 C.F.R. § 273.-9(b)(2)(ii), as applied to foster care payments, is hereby declared and adjudged to violate the Food Stamp Act.

2. Defendant's motion for summary judgment is denied.

3. Defendants are enjoined in Minnesota from enforcing regulations that require foster children to be included in food stamp households and foster care maintenance payments to be included in income for the purposes of determining food stamp eligibility.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**11.** In addition, there appears to be no inherent reason why a person must make the payment on his or her own behalf in order to be considered a "boarder." For example, a boarder has been defined as "[o]ne that is provided with regular meals, with or without lodging." *Black's Law Dictionary* 158 (5th ed. 1979).

**12.** Because the regulations violate the Food Stamp Act, the court need not consider plaintiffs' constitutional causes of action.