**Sandra FOSTER and Judith Girouard, individually and on behalf of all others similarly situated**

v.

**Veronica H. CELANI, as Commissioner of the Vermont Department of Social Welfare, Gretchen Morse, as Secretary of the Vermont Agency of Human Services and Frank W. Naylor, as Secretary of the U.S. Department of Agriculture.**

**Civ. A. No. 85–320.**

United States District Court,
D. Vermont.

July 1, 1987.

Stephen Norman, Vermont Legal Aid, Inc., Burlington, Vt., for plaintiffs.

Michael McShane, Asst. Atty. Gen., Montpelier, Vt., for defendants Celani and Morse.

Felicia Chambers, Dept. of Justice, Washington, D.C., and Patti Page, Asst. U.S. Atty., Burlington, Vt., for defendant Naylor.

## OPINION AND ORDER

COFFRIN, Chief Judge.

This is a class action arising under the Food Stamp Act, 7 U.S.C. §§ 2011–2029. Plaintiffs are a Vermont-wide class of foster parents whose food stamp benefits were reduced, or terminated in the 12 months preceding the filing of their complaint because "foster care maintenance payments" were included in their household income for the purpose of determining their eligibility to receive food stamps. Defendants are the heads of two Vermont state agencies and a federal agency who administer the food stamp program. Plaintiffs challenge the validity of identical federal and state administrative regulations promulgated by defendants which mandate that "foster care maintenance payments" be included in a household's income for food stamp eligibility purposes. Plaintiffs

seek declaratory and injunctive relief invalidating the challenged regulations. Both parties agree that there are no genuine issues of material fact to be resolved at trial and have filed cross motions for summary judgment.

On January 16, 1987, the United States Magistrate issued a report and recommendation recommending that we grant plaintiffs' motion for summary judgment in this action. Both plaintiff and defendant timely objected to portions of the report and recommendation and seek de novo review of these disputed portions in this court pursuant to Fed.R.Civ.P. 72(b). For all the following reasons, we agree with the magistrate's recommendation but on grounds different than those stated in the magistrate's report. Accordingly, we GRANT plaintiffs' motion for summary judgment and DENY defendants' summary judgment motion.

## FACTUAL BACKGROUND

The material facts in this action are not in dispute. As indicated above, plaintiffs are a state-wide class of persons whose food stamp benefits were reduced or terminated in the 12 months preceding the filing of their complaint because foster care maintenance payments were included in their household income for purposes of determining their eligibility to receive food stamps. Both of the named plaintiffs, Foster and Girouard (hereinafter referred to as "plaintiffs"), are food stamp recipients whose benefits were reduced after they accepted foster children into their homes and concomitantly began to receive foster care maintenance payments. After their benefits were reduced, plaintiffs requested a fair hearing before the Vermont Human Services Board to contest the Vermont Department of Social Welfare's decision to include foster care maintenance payments in their incomes for the purpose of determining food stamp eligibility. The Human Services Board upheld the determination of the Department in both cases. Plaintiffs subsequently filed this action. The case

was referred to the magistrate on May 1, 1986. On August 5, 1986, we adopted the magistrate's report and recommendation that the plaintiff class be certified. Subsequently, both plaintiffs and defendants filed motions for summary judgment.

## DISCUSSION

### i) Statutory Framework

The Food Stamp Act (hereinafter the "Act") is codified at 7 U.S.C. §§ 2011–2029 (1986). The purpose of the Act is to raise nutritional levels in low-income households. *Id.*, § 2011. Eligibility to receive food stamps under the Act is determined, not on an individual basis, but on the basis of "household" income. *Id.*, § 2017. A "household" is eligible to receive food stamps if its income and other financial resources are "determined to be a substantial limiting factor in permitting [the household] to obtain a more nutritious diet." *Id.*, § 2014(a). A "household" is defined under the Act as:

(1) an individual who lives alone or who, while living with others, customarily purchases food and prepares meals for home consumption separate and apart from the others, or (2) *a group of individuals who live together and customarily purchase food and prepare meals together for home consumption;* except that parents and children, or siblings, who live together shall be treated as a group of individuals who customarily purchase and prepare meals together for home consumption even if they do not do so, unless one of the parents, or siblings, is an elderly or disabled member.

*Id.*, § 2012(i) (emphasis supplied).

Pursuant to the statutory definition of household, the Secretary of Agriculture ("Secretary") has promulgated a regulation which provides that "[i]n no event shall nonhousehold member status ... be granted to ... [c]hildren under 18 years of age under the parental control of an adult member of the household." 7 C.F.R. § 273.1(a)(3)(ii) (1986).[1] Plaintiffs seek to have this regulation invalidated to the ex-

---

1. This regulation is currently listed at 7 C.F.R. § 273.1(2)(i)(B) (1987). No substantive changes

were made in this regulation for 1987. For clarity's sake, we shall refer to this regulation as

tent that it requires the inclusion of foster children in the food stamp household.

A food stamp household's "income" under the Act is defined broadly to include "all income from whatever source." *Id.*, § 2014(d). However, this definition of income is subject to certain enumerated exclusions, two of which are pertinent to the issues raised for our review. Section 2014(d)(5) provides that "reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household" are excluded from food stamp household income. Section 2014(d)(6) excludes from household income "moneys received and used for the care and maintenance of a third-party beneficiary who is not a household member."

Pursuant to the § 2014(d) statutory definition of income, the Secretary has promulgated a regulation which provides that "[u]nearned income shall include ... foster care payments for children or adults." 7 C.F.R. § 273.9(b)(2)(ii) (1986). The Vermont Department of Social Welfare has promulgated an identical regulation. Food Stamp Manual § 273.9(b)(2)(ii).[2] The plaintiffs seek to have these regulations declared invalid as contrary to the purpose and intent of the Act.

Foster care maintenance payments are provided under the auspices of the Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 670–679. This Act provides federal financial assistance to the states to enable them to provide foster care and adoption assistance to children in need. Foster care maintenance payments are defined under the Adoption Assistance Act as "payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation." 42 U.S.C. § 675(4).

ii) Objections to Magistrate's Report

On January 16, 1987, the magistrate issued his report and recommendation recommending that plaintiffs' motion for summary judgment be granted and defendants' summary judgment motion be denied. The magistrate found, inter alia, that foster children fall "squarely within" the Section 2012(i) definition of a food stamp "household" member. However, the magistrate went on to conclude that foster care maintenance payments should nevertheless be excluded from the calculation of food stamp household income because the payments "are reimbursements which do not exceed expenses actually incurred ... [and] do not represent a gain or benefit to the household." 7 U.S.C. § 2014(d)(5).

Defendants object to the magistrate's conclusion that foster care maintenance payments are excludable from household income under Section 2014(d)(5). Defendants argue that such payments do constitute a "gain or benefit to the household" and that they are not "reimbursements" as that term is used in the statute. Therefore defendants request that we uphold the challenged regulations.

Although the magistrate's recommendation is in their favor, plaintiffs object to the magistrate's conclusion that foster children must be included in a food stamp household. Plaintiffs assert that foster children should be eligible for the same status as adult "boarders", who may be excluded from a food stamp household at the household's option. Plaintiffs concede that if foster children are deemed members of food stamp households, then foster care maintenance payments do constitute a "gain or benefit to the household". (Plaintiffs' Response to Federal Defendants' Objections, p. 1). We will address plaintiffs' objection first because it is dispositive of the issues raised on review.

iii) Inclusion of Foster Children in Food Stamp Households

The central issue before the court is whether foster children must be included in

---

it appeared in 1986, when the parties filed their motions for summary judgment.

**2.** Throughout this opinion, we shall refer only to the Secretary's regulations. However, our analysis and conclusions apply equally to the Secretary's challenged regulation and its identical Vermont counterpart.

a food stamp household or whether they may be excluded from the food stamp household as "boarders". If foster children are eligible under the statute and its legislative history to receive "boarder" status, then the Secretary's challenged regulation at 7 C.F.R. § 273(b)(2)(ii), which mandates that foster care maintenance payments be included in household income, cannot be upheld. Furthermore, the Secretary's "parental control" regulation, listed at 7 C.F.R. § 273.1(a)(3)(ii) must be limited in its application so that it does not prevent foster children from receiving "boarder" status.

Initially, we note that we approach plaintiffs' assertion that an administrative regulation is invalid with caution. It is axiomatic that federal courts must show considerable deference to the regulatory interpretations of an agency charged with administering a statute in an area within the agency's area of expertise. *Blum v. Bacon*, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). If reasonable minds may differ concerning the proper interpretation of a statute, courts should defer to the expertise of the administrative agency. *See Knebel v. Hein*, 429 U.S. 288, 294, n. 14, 97 S.Ct. 549, 553, n. 14, 50 L.Ed.2d 485 (1977) ("We have consistently held that where reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority.") (citations omitted). However, regulations which contravene a statute or the Congressional purpose expressed in the legislative history cannot be upheld. *See Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) ("Although Agency's interpretation of the statute under which it operates is entitled to some deference, 'that deference is constrained by our obligation to honor the clear meaning of the statute, as revealed by its language, purpose, and history.'") (citations omitted). *See also National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 476–77, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979).

Plaintiffs' major objection to the Magistrate's Report and Recommendation is that foster children should receive the same nonhousehold member status as adult paying boarders. Plaintiffs do not dispute that foster children customarily eat meals with their foster family. However, the Secretary's regulations allow a "boarder" to be excluded from membership in the food stamp household even though the boarder customarily eats meals with the host family. 7 C.F.R. § 273.1(c) (1986). Plaintiffs argue that neither the statute nor its legislative history provide a basis for the Secretary's regulations denying foster children "boarder" status.

Section 2012 itself does not directly define the term "boarder". The legislative history of the 1977 amendments to the Act, upon which the definition of household in Section 2012(i) is currently based, does define the term "boarder." "A boarder should be *anyone* who pays compensation for his meals that is reasonable...." H.R. No. 464, 95th Cong., 1st Sess. 143, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1978, 2113 (emphasis supplied). Other relevant portions of the House Report explain Congress' intent vis a vis boarders as follows:

If they [a group of individuals] customarily purchase food and prepare meals together, then they constitue [sic] a household *for eating purposes*, and it is irrelevant how they handle other living expenses. If they constitute an eating unit, they constitute a household to whom a coupon allotment should be given if they apply and meet all of the other eligibility criteria, *unless one or more of them pays for his meals as a boarder....* The Committee believes that their eating unit status, not their economic unit status, is what is relevant to the food stamp program.

Accordingly, the bill provides that persons who both purchase food and prepare meals together, *and who are not boarders*, constitute a food stamp household. Persons who do not perform these

two functions together, or a person (or persons) who purchases food and prepares meals with others *but is a boarder by virtue of paying compensation for such meals,* constitute separate households.

*Id.,* 1977 U.S.Code Cong. & Admin.News at 2113 (emphasis added).[3]

The House Report makes clear that Congress intended that "anyone" who pays reasonable compensation for meals should be treated as a boarder, and is excludable from the food stamp household. By definition, foster care maintenance payments reasonably compensate the foster care provider for meals, as well as other items. *See* 42 U.S.C. § 675(4). The court finds no authority in the statute or the legislative history for the Secretary's regulations which deny boarder status to foster children, and such regulations directly contravene the definition of a "boarder" in the 1977 legislative history.

We note that before 1977, Congress included "legally assigned foster children" in the definition of household. However, the 1977 amendments to the Act removed the specific reference to foster children and added the boarder exclusion, which appears to include foster children. The 1977 legislative history does not explain why the reference to foster children was removed. However, given the nature of the 1977 amendments in general, which shifted the focus of the household concept from "economic units" to "eating units", we believe that the specific reference to foster children was removed so that foster children could be included in the boarder category. *Cf. Murray v. Lyng,* 667 F.Supp. 668, 673 (D.Minn.1987) (concluding that "the removal [of the reference to foster children in 1977] itself suggests that Congress did not intend foster children to be included in the food stamp household").

In both 1981 and 1982, Congress again amended the definition of a food stamp "household". The 1981 amendment provided that parents and children who live together shall be treated as one household. Omnibus Budget Reconciliation Act of 1981, § 101(1), Pub.L. No. 97-35, 95 Stat. 357, 358. The 1982 amendment added that siblings who live together constitute a single household under the Act. Omnibus Budget Reconciliation Act of 1982, § 142, Pub.L. No. 97-253, 96 Stat. 763, 772. The constitutionality of these amendments was upheld by the Supreme Court in *Lyng v.*

---

3. This quoted portion of the 1977 House Report indicates that boarders could "constitute separate households." *Id.,* 1977 U.S.Code Cong. & Admin.News at 2113. This provision was repealed by the 1981 amendments to the Act. In 1981, Congress amended Section 2012(i) to provide that "[i]n no event shall any individual or group of individuals constitute a household if they ... live with others and pay compensation to the others for meals." The rationale for this amendment was explained in the Senate Report:

[This] provision ... [is] designed to prevent food stamp household members from artificially claiming to be separate households, although they live together, and thereby receiving larger benefits. Because small households are provided more food stamps per person and because the same standard deduction is applied to income regardless of household size, a residential unit that splits into several smaller households can, under present law, receive larger total benefits than would be the case if the individuals applied as a single, larger household....

The [boarder amendment] would exclude all boarders from participation in the food stamp program as individual households. Under present law, boarders in commercial boarding houses are excluded from participation, but "informal boarders" who pay compensation for meals to another household member are allowed to participate. The result has been that, in some households, members choose to pay compensation for some of their meals to the other members and then qualify as a separate household, increasing total benefits to the household. This practice would be eliminated, and these households would have to apply as single household units under the new requirement.

S.Rep. No. 139, 97th Cong., 1st Sess. 52-53, *reprinted in* 1981 U.S.Code Cong. & Admin. News 396, 442-43. The last sentence of the legislative history quoted above provides the statutory authority for the Secretary's regulation promulgated at 7 C.F.R. § 273.1(c) (1986), which allows boarders who cannot participate in the program as individuals to participate as a member of the household, at the household's request. It is important to note that the 1981 amendments did nothing to change or revoke the definition of boarder contained in the 1977 legislative history. Therefore, foster children appear eligible to receive boarder status, at the host food stamp household's option.

*Castillo,* 477 U.S. 635, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986).

Defendants concede in their briefs that these amendments have "no bearing on whether foster children are properly included in the household definition". (*See* Government's Memo in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Cross Motion for Summary Judgment, p. 8, n. 2). The amendments apply only to groups of related individuals. *Lyng,* 106 S.Ct. at 2728, 2731. Furthermore, the 1981–82 amendments did not spawn the Secretary's challenged "parental control" regulation listed at 7 C.F.R. § 273.1(a)(3)(ii). This regulation appeared in 1978, well before the 1981–82 amendments. *See* 42 Fed.Reg. 18,911 (1978) (to be codified at 7 C.F.R. § 273.1(b)(2)(i)). To the extent that this regulation contravenes the Congressional intent expressed in the 1977 legislative history of granting boarder status to "anyone" who pays reasonable compensation for meals, the regulation is invalid. In order to uphold the regulation, the term "parental control" must be considered solely in the context of parents and *legally related* children. Such an interpretation comports with the Congressional intent expressed in both the 1977 and the 1981–82 amendments to the definition of household.

In a recent opinion brought to our attention by the plaintiffs in this action, the United States District Court for the District of Minnesota considered the identical issue presented in the instant litigation and concluded that foster children should be treated as boarders rather than as household members. *Murray v. Lyng,* 667 F.Supp. 668 (D.Minn.1987). The court also concluded that foster care maintenance payments should be excluded from household income under the household income exemptions listed in Section 2014(d)(5) and (6). *Id.* at 674. As indicated earlier, these exclusions respectively exclude from food stamp household income reimbursements which do not represent a gain or benefit to the household, and payments received for the care and maintenance of a third-party beneficiary.

Having determined that foster children are eligible to receive "boarder" status under the Act, we believe that it is unnecessary to move on to an examination of the exclusions to income listed in Section 2014 because the Secretary's regulation listed at 7 C.F.R. § 273.1(c)(5) (1986) already excludes from household income any boarder "income or resources." Nevertheless, the Secretary's regulations also provide that "payments from the boarder shall be treated as self-employment income [to the household] ... [t]he income from boarders shall include all direct payments to the household for room and meals...." *Id.,* § 273.11(b)(1)(i) (1986). The net result is that while a boarder's income is not included in the calculation of food stamp household income, any amounts that a boarder pays to a food stamp household for room and board constitute self-employment income to the household, which is includable in household income under the formula set out at 7 C.F.R. § 273.11(b).[4]

---

**4.** For example, applying the Secretary's boarder income regulations to the case at bar, if a food stamp household elects boarder status for a foster child, the amount of any foster care maintenance payment is not includable per se in household income. However, the amount of each foster care maintenance payment allocable to room and board is included as self-employment income to the household under Section 273.11(b)(1)(i).

Vermont SRS Regulations §§ 5013 and 5013.1 provide breakdowns of the amount of each foster care maintenance payment allocable to room and board. (See Appendix 2 to Plaintiff's Memo in Support of Summary Judgment). According to the figures in these regulations, the amount of each foster care payment allocable to room and board ranges from a high of 75 percent of each monthly payment for foster children aged 0 to 5 to a low of 71 percent for each payment for foster children aged 13 and over. Therefore, if a foster family elects boarder status for its foster child, between 71 and 75 percent of each foster care maintenance payment will be counted as self-employment income to the household. Under the formula listed at 7 C.F.R. § 273.11(b)(i) and (ii), the "net income", if any, from this self-employment income is included as household income for food stamp eligibility purposes. (This "net income" formula appears to be the product of Section 2014(d)(9), which excludes from household income the cost of producing self-employment income.)

We realize that it could be argued that the Secretary's regulations excluding boarder "income or resources" from food stamp household income are inapplicable to foster children because, unlike boarders, the foster child's "income" is paid directly to the foster family in the form of foster care maintenance payments. Under this interpretation, it is necessary to go to the second step of analysis, as the Minnesota court did, and determine if the foster care maintenance payment is excludable from household income under one of the exceptions listed in Section 2014(d). The Minnesota court relied primarily on Section 2014(d)(6) and determined that foster care payments are excludable from household income because they are payments for third party beneficiaries. We decline to adopt this position for several reasons.

First, the legislative history to Section 2014(d)(6) indicates that Congress may only have intended this exclusion to apply to money received for persons living *outside* the home. The legislative history states that "this section would exclude moneys received by a household but used for the care and maintenance of another person who is not a household member, for example, a relative's pension check that goes to and is cashed by the household and then is used to support that relative *in an institution.*" H.R.Rep. No. 464, 95th Cong., 1st Sess. 36, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1978, 2013 (emphasis supplied). The government argues that this language indicates that Congress did not intend this exclusion to apply "to money received by or for persons living in the same residence and sharing meals." (Government's Memo for Summary Judgment, p. 10, n. 4). The Minnesota court did not address this possible interpretation of the legislative history.

A second problem with applying the Section 2014(d) exclusions in the boarder context is that both Section 2014(d)(6) or (d)(5) would exclude *all* of each foster care maintenance payment from foster household income. Yet because of the fact that room and board expenses are shared and decrease per capita as household size increases, the boarder regulations, which include room and board payments as self-employment income, seem more appropriate to the foster child situation. Unlike the Section 2014(d)(6) third-party beneficiary relative who lives in an institution, the foster child who lives in the home and pays compensation for his living space is reducing the per capita cost of housing for the other members of the family. Likewise, to the extent that foster care maintenance payments reduce per capita household housing costs, such payments do constitute a "gain or benefit" to the household under Section 2014(d)(5).

Finally, the fact that foster care payments go directly to the foster family does not necessarily render the boarder income regulations inapplicable. Despite the fact that the money is paid directly to the foster family, we believe that money still constitutes the "income and resources" of the foster child. The foster family is prohibited from spending the money except for the foster child's benefit. The Minnesota court itself recognized the fact that foster children do not become "unlike boarders" merely because foster care payments are made directly by the state to the family, as opposed to the usual situation where the boarder himself pays the host family.

> The Secretary's argument that foster children are unlike boarders because they do not directly make the payments for their food and lodging is unpersuasive. Apparently, the Secretary would consider foster children to be more like boarders if the state were to make payments directly to them and they in turn transferred the funds to their foster parents. It is unlikely that Congress intended the form of the transfer to determine the substantive treatment of the relationship.

*Murray v. Lyng, supra,* at 674–75. Applying this reasoning, we believe that foster care maintenance payments may still be considered "income and resources" of the foster child even though the payments are made directly to the foster family. Therefore, the boarder income regulations would apply in lieu of the section 2014(d) income exclusions.

## CONCLUSION

In accordance with the above discussion, we find that the Secretary's challenged regulation at 7 C.F.R. § 273.9(b)(2)(ii) (1986), which includes the entire amount of foster care maintenance payments in household income, is invalid because it contravenes the Congressional intent set forth in the legislative history of the Food Stamp Act. Furthermore, the Secretary's "parental control" regulation set forth at 7 C.F.R. § 273.1(a)(3)(ii) (1986) cannot be applied to foster children, who may be excluded from a food stamp household as boarders. We therefore adopt the magistrate's recommendation that plaintiffs' motion for summary judgment be GRANTED but for reasons different than those stated in the magistrate's report. Defendants are enjoined within this district from enforcing the challenged regulations. Defendants' motion for summary judgment is DENIED. It is SO ORDERED.