Thelma RIOS, Plaintiff and Appellant,

v.

SOUTH DAKOTA DEPARTMENT OF
SOCIAL SERVICES, Defendant
and Appellee.

Nos. 15683, 15703.

Supreme Court of South Dakota.

Considered on Briefs Oct. 5, 1987.

Decided March 9, 1988.

Rehearing Denied April 19, 1988.

Mark Falk of Black Hills Legal Services, Inc., Rapid City, for plaintiff and appellant.

William J. Nevin, Asst. Atty. Gen., Pierre, for defendant and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

HENDERSON, Justice.

## ACTION/PROCEDURAL HISTORY

Defendant–Appellee, the South Dakota Department of Social Services (DSS), required Plaintiff–Appellant, Thelma Rios, to report foster care payments, for children placed with her, as household income for purposes of food stamp eligibility. After an administrative hearing in which the hearing examiner determined that DSS was essentially correct, Rios appealed to the circuit court of the Seventh Judicial Circuit. The circuit court affirmed in part, but reversed in part, holding that Rios should be allowed a choice. She could either report the foster children as members of her household for food stamp purposes while including her foster care payments as household income, or she could opt to report neither the foster children nor the foster care payment income.

## ISSUES/HOLDING

Rios appeals, alleging circuit court error in three areas: (1) DSS provided Rios with inadequate notice that it was reducing her food stamp benefits, and failed to give her an explanation for its action; (2) DSS should be estopped from reducing Rios' food stamp benefits; and, (3) DSS cannot consider her foster care income in determining her food stamp benefits.

DSS, in turn, filed a notice of review, asserting that the trial court erred in allowing Rios a choice, as federal regulations require reporting foster care payments as unearned income. This argument is considered here together with Rios' third allegation of error.

We affirm the circuit court on the first two issues, but reverse on the third, in our rationale rejecting the related DSS argument. Foster care payments cannot be counted as income for food stamp eligibility purposes, nor can foster children be included as members of a food stamp household. The circuit court was thus incorrect in offering Rios a choice.

## FACTS

Rios is a South Dakota resident who receives Aid to Families with Dependent Children (AFDC) payments and food stamps. She is also a foster child caretaker who receives foster care payments to provide food, clothing, shelter, supervision, and school supplies for children placed in her home.

Before entering the foster care program, Rios was assured by DSS foster care personnel, though not by her food stamp worker, that foster care payments would have no adverse effect on her food stamp or AFDC eligibility. In January 1985, the Rios household was certified as qualified for food stamp benefits. DSS subsequently sent her a Food Stamp Notice of Action, informing her she would receive $211 in food stamps monthly, through September 30, 1985. Her food stamp level would remain at $211 unless she was otherwise

notified. The notice also stated that issuance of food stamps depended on information submitted by Rios on monthly DSS report forms.

On April 15, 1985, three foster children were placed in the Rios home. Rios included these three children in her household on her April food stamp report, but did not list the foster care payments she received for them. On April 24, 1985, DSS sent Rios a Notice of Action stating that her food stamps would be increased to $378 because of the increase in her household size due to the foster children's placement with her.

The next month, Rios submitted her monthly report, on which a fourth foster child was listed, but again omitted mention of foster care payments received. On May 23, 1985, DSS notified Rios that her food stamp case would be closed because of her failure to report her foster care payments. The notice directed her to complete the income section of the monthly report and return it to DSS. DSS used a $375 figure to calculate her June 1985 food stamp level, which it set at $285.

On her June report, Rios entered $884 of foster care payments received for that month. On June 26, 1985, DSS mailed Rios another Notice of Action, informing her that her food stamp benefits were reduced to $74 per month. The notice indicated that among the factors used in determining the new allowance were $350 in AFDC payments, $884 for foster care payments, $44 for shelter cost, $216 for utilities, and a household size of eight (8).

Rios sent a fair hearing request to DSS on June 28, 1985. DSS then notified Rios it was reinstating her food stamps at their previous level of $285 pending the outcome of the hearing. This DSS notice contained a provision that, in the event the result of the hearing was in DSS' favor, she would be required to repay any difference between the reinstated benefits and those due at the recalculated, post-hearing level. It was also noted that the June 26, 1985, notice was incorrect, and should have shown a new food stamp allowance of $133, not $74.

An administrative hearing, concerning reduction of Rios' food stamp benefits through inclusion of her foster care payments in household income, was held on August 15, 1985. The hearing examiner determined that DSS was correct in its calculations. This decision was affirmed by the chief examiner. Rios appealed to the circuit court, which affirmed in part and reversed in part, a holding Rios presently appeals.

## DECISION

### I. ADEQUACY OF NOTICE PROVIDED TO RIOS BY DSS

Rios' first contention is that DSS provided her with inadequate notice and explanation of the reduction of her food stamp benefits.

The standard of review used in administrative agency cases depends on whether the issue involved is a question of fact, or a question of law. If a question of fact, the clearly erroneous rule is utilized. *Permann v. South Dakota Dep't of Labor*, 411 N.W.2d 113 (S.D.1987). An administrative agency will only be reversed on a factual issue if, after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake has been made. *Dakota Harvestore v. South Dakota Dep't of Revenue*, 331 N.W.2d 828, 830 (S.D.1983). Regarding questions of law, decisions of administrative agencies and circuit courts are fully reviewable on a de novo basis. *Permann*, 411 N.W.2d at 118. If the issue is a mixed question of fact and law, the standard to be used depends on (1) whether its resolution requires consideration of underlying principles behind a rule of law, in which case we review it de novo, or (2) whether the analysis is essentially factual, and thus is better decided by the agency or lower court, whereupon the clearly erroneous standard applies. *Id.* at 118–19 (citing *United States v. McConney*, 728 F.2d 1195 (9th Cir.1984)).

The question on this issue is best classified as a mixed question of fact and law, but one that is essentially factual in nature. The historical facts not being dis-

puted, the matter turns on whether DSS met the requirements of 7 C.F.R. § 273.13(a)(3)(i-vi) (1987), which sets out notice requirements for state agencies terminating or reducing food stamp benefits:

The State agency may notify a household that its benefits will be reduced or terminated, no later than the date the household receives, or would have received, its allotment, if the following conditions are met:

(i) The household reports the information which results in the reduction or termination.

(ii) The reported information is in writing and signed by the household.

(iii) The State agency can determine the household's allotment or ineligibility based solely on the information provided by the household....

(iv) The household retains its right to a fair hearing as allowed in § 273.15.

(v) The household retains its right to continued benefits if the fair hearing is requested within the time period set by the State agency in accordance with § 273.13(a)(1).

(vi) The State agency continues the household's previous benefit level, if required, within five working days of the household's request for a fair hearing.

It appears, from the facts, that DSS fully complied with all of the conditions set out in the federal regulation. On June 16, 1985, Rios completed and returned her June monthly report, listing $884 in foster care payments. On June 26, 1985, DSS mailed Rios a Food Stamp Notice of Action, informing her of its reduction of her food stamp allotment to $74, a figure later increased to $133 because of an error in calculation. This Notice of Action also listed the factors used to determine that her benefits would be reduced, the income figures she, herself, supplied. The reduction was to take effect on July 1, 1985, per the federal regulation. DSS likewise complied with the hearing requirements, freezing her allotment level in the interim.

As DSS met the federal notice requirements, the circuit court is affirmed regard-ing this issue; however, related aspects of notice and the legal sufficiency of the federal regulatory scheme as a whole are dealt with below, under Issues II and III.

## II. ESTOPPEL

Rios also claims that DSS should be estopped from considering her foster care payments in calculating her food stamp benefits. This argument arises from her having been told by foster care program representatives that such payments would not adversely affect her food stamp eligibility. The circuit court rejected this argument, and we affirm.

■ Estoppel against public entities is little favored and will only be applied when exceptional circumstances demand its application to prevent manifest injustice. *Sioux Valley Hosp. Ass'n v. Tripp County*, 404 N.W.2d 519 (S.D.1987); *City of Rapid City v. Hoogterp*, 85 S.D. 176, 179 N.W.2d 15 (1970). The party seeking protection of the estoppel doctrine bears the burden of establishing the existence of the necessary exceptional circumstances. *Sioux Falls Constr. Co. v. City of Sioux Falls*, 297 N.W.2d 454, 459 (S.D.1980); *Hoogterp*, 85 S.D. at 179–80, 179 N.W.2d at 17.

■ Given the burden, established by case law, that Rios must carry on this issue, it is significant to note that the record is barren of any mention of her discussing foster care payments with her food stamp workers, despite numerous oral and written contacts with them. Considered in light of the imperative language concerning reporting of income on the "Rights and Responsibilities" form she signed in January 1985, we affirm the circuit court's rejection of Rios' argument on this issue. Even viewing the matter from a "de novo" perspective, estoppel is unwarranted here.

## III. INCLUSION OF FOSTER CARE PAYMENTS AND FOSTER CHILDREN IN CALCULATION OF FOOD STAMP ALLOTMENTS

■ The primary issue in this case is: Should foster care maintenance payments

be included in the calculation of food stamp allotments? This question also necessarily involves the inclusion of foster children in the food stamp household, as the size of such households is a key factor in determining the allotments.

Current federal regulations (7 C.F.R. § 273.9(b)(2)(ii) (1987)) now apparently direct the states of this Nation to require inclusion of foster care payments as unearned income. The effect of this, in practice, is to reduce the food stamp benefits allotted to households which enter the foster care program; a curious result, it could be rationally reasoned. Two very recent federal district court decisions provide well-reasoned authority for the proposition that foster care payments should not be reported as unearned income for food stamp purposes, and foster children should not be included as members of food stamp households. *See Foster v. Celani*, 683 F.Supp. 84 (D.Vt.1987); *Murray v. Lyng*, 667 F.Supp. 668 (D.Minn.1987). The substance of these cases is that the federal regulations requiring such inclusions in unearned income are contrary to Congressional intent (to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households") as expressed in the Food Stamp Act (7 U.S.C. § 2011 (1982)), and have no reasonable basis in law.

*Murray*, 667 F.Supp. 668, involved a challenge to state and federal food stamp regulations very similar to the present case. The analysis in *Murray, id.* at 672–74, began with the statutory definition of the food stamp household. The Food Stamp Act currently defines a household as:

(1) an individual who lives alone or who, while living with others, customarily purchases food and prepares meals for home consumption separate and apart from the others, or (2) a group of individuals who live together and customarily purchase food and prepare meals together for home consumption; except that parents and children, or siblings, who live together shall be treated as a group of individuals who customarily purchase and prepare meals together for home consumption even if they do not do so, unless one of the parents, or siblings, is an elderly or disabled member.... In no event shall any individual or group of individuals constitute a household if they reside in an institution or boarding house, or else live with others and pay compensation to the others for meals.

7 U.S.C. § 2012(i) (1982).

The current definition stresses common purchase and preparation of food consumed at home, as is apparent above. The original act contained no specific reference to foster children. *See* Food Stamp Act of 1964, Pub.L. No. 88–525, § 3(e), 78 Stat. 703 (1964). This was changed in 1971, when Congress redefined the household as "a group of related individuals (including ... legally assigned foster children)," Pub. L. No. 91–671, § 2(a), 84 Stat. 2048 (1971). This new definition was struck down by the United States Supreme Court for reasons not relevant here. *See United States Dep't of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). When Congress rewrote the stricken section in 1977, it deleted the reference to foster children, and added the language specifically excluding from food stamp households individuals who live with others whom they compensate for meals. *See* Food and Agriculture Act of 1977, Pub.L. No. 95–113, § 1301, 91 Stat. 913, 960 (1977); *see also Murray*, 667 F.Supp. at 672–73.

The *Murray* Court examined foster care placements and concluded that they closely resembled boarding relationships in several important respects. Both include a significant financial element. In the case of foster placements, the state makes payments to foster parents to cover costs of care provided. *Murray*, 667 F.Supp. at 674. Foster children do not live with their foster parents in the "traditional" sense, because the relationship is heavily regulated by the state, and foster care placements tend to be of short duration, subject to frequent change. *Murray, id.* As nonhousehold members, the foster children may be classified as third-party beneficiaries, payments

for whom are not includable in household income for food stamp purposes. *Murray, id.* (citing 7 U.S.C. § 2014(d)(6)). Where an applicant has a duty to spend money only on behalf of another person, the money is plainly unavailable for the applicant's own needs and is consequently not considered income available to the applicant. *McCoy v. Bergland,* 519 F.Supp. 796, 801 (N.D.N.Y.1981). The *Murray* Court alternatively reasoned that foster care maintenance payments could be excluded as "reimbursements which do not exceed expenses actually incurred and which do not represent a gain or benefit to the household" under 7 U.S.C. § 2014(d)(5) (1982). *Murray,* 667 F.Supp. at 674 n. 9. In sum, the *Murray* Court concluded that foster children were not members of the food stamp household, and payments made on their behalf are not income reportable for food stamp purposes. *Murray, id.* Indirect support for this interpretation is supplied by a South Dakota regulation which specifies that foster care payments are not to be considered income for the purposes of Aid to Dependent Children (ADC) grants because "[t]his foster care payment shall be considered sufficient to meet the needs of the foster child only and shall not result in any significant income or profit available to the foster parent." A.R.S.D. § 67:12:05:24. The Internal Revenue Code similarly excludes foster payments from a foster parent's income. 26 U.S.C. § 131 (1982).

In *Foster v. Celani,* 683 F.Supp. 84 (D.Vt.1987), the same result classifying foster children as boarders not automatically included in the food stamp household was reached, though that court preferred not to rely on the income exclusions of 7 U.S.C. § 2014, mentioned in *Murray.* It held that the maintenance payments of foster children were already excluded under 7 C.F.R. § 273.1(c)(5) (1986), as resources of the foster children "boarders." *Foster v. Celani,* 683 F.Supp. at 89. The *Foster* Court, however, further held that the payments the foster family received, in effect, from the foster children, should be counted as self-employment income, part of which is included in household income under 7

C.F.R. § 273.11(b) because the household realized a gain. *Id.* This latter holding is doubtful when considered in the light of A.R.S.D. § 67:12:05:24 and the similar recent exclusion of foster care maintenance payments from the calculations of AFDC benefits in the Tax Reform Act of 1986, § 1883(b)(10), Pub.L. No. 99–514, 100 Stat. 2917 (codified at 42 U.S.C. § 678), cited in *Murray,* 667 F.Supp. at 674 n. 10.

Further support for the separation of foster care considerations from food stamp determinations can be found in *Owens v. Heckler,* 753 F.2d 675 (8th Cir.1985). There, the Eighth Circuit Court of Appeals evaluated a statutory tangle akin to the present case. *Heckler* involved the issue of whether Old Age, Survivors, and Disability Insurance (OASDI) extended student benefits were to be deemed income for AFDC purposes. The Eighth Circuit decisively rejected the government argument for inclusion:

> The Secretary's interpretation "however faithful it may be to the letter of the law, totally defeats the spirit of the law, and serves only a sterile administrative purpose." [citations omitted]....
>
> In this case, the Court does not believe that Congress could have intended by one project to aid OASDI recipients ... and then by another program to reduce the amount of benefits paid on behalf of dependent children of that OASDI recipient. It amounts to the federal government holding out a promise of aid for education with one hand and at the same time with the other hand having the state government, spurred by federal regulations, destroying that promise of aid. The Court finds that Congress has provided two assistance programs aimed at two distinct needs. Assistance for the one need ... should not be reduced because a separate need ... is also present at the same time.

*Owens,* 753 F.2d at 681 (quoting *Elam v. Hanson,* 384 F.Supp. 549, 553 (N.D.Ohio 1974)).

The parallels to the present case are striking, if not exact. Rios accepted foster

children into her home, whose expenses are covered by government payments. We cannot include such payments in considering Rios' food stamp eligibility without undercutting the purposes of the food stamp program. The foster care payments are for the benefit of the foster children, and the food stamps for the Rios household. Food stamps are unnecessary for the foster children, as their needs are taken care of by the government payments. This rationale also requires the exclusion of foster children from being counted as members of food stamp households. Two needs; two programs.

While 7 C.F.R. § 273.1(c) (1987) gives food stamp households the choice between including boarders as members, in which cases boarder income is counted as household income, or excluding them and their income, this section should have no application in the foster care setting. The inclusion of foster children in the food stamp household, and the attendant inclusion of their maintenance payments as income for the household, is clearly contrary to the intent of Congress that such payments are for the support of the foster children alone. 42 U.S.C. § 675(4) (1982). We believe the circuit court could not offer Rios this choice. The circuit court is reversed on the last issue. Therefore, we remand this case to the circuit court to enter a judgment in accordance with the holding herein which would direct the DSS to implement said holding.

WUEST, C.J., and MORGAN, J., concur.

SABERS and MILLER, JJ., dissent.

SABERS, Justice (dissenting).

I concur in all respects with the majority opinion except as to Issue III, where I respectfully dissent. Under Issue III, the question is whether to include or exclude both the foster care children and the income in respect to them for food stamp purposes. To include both or exclude both —that is the question.

It was wrong for Rios to include the foster care children but exclude the income in respect to the children for food stamp purposes. I agree with the majority that it was error for the trial court to provide Rios a choice of exclusion of both or inclusion of both children and income.

I disagree with the majority where it supports a rule of exclusion of both foster care children and income for food stamp purposes. In the absence of clearly expressed congressional intent requiring exclusion, I would require inclusion of foster care children and income in respect to them for food stamp purposes. This is in accord with 7 C.F.R. ¶ 273.9(b)(2)(ii) which directs the states of this nation to require inclusion of foster care payments as unearned income, and state implementations of said regulations. The majority opinion submits that two "well reasoned" very recent federal district court decisions indicate requiring such inclusions in unearned income is contrary to congressional intent as expressed in the Food Stamp Act (7 U.S.C. § 2014).

The majority opinion also states:

We cannot include such payments in considering Rios' food stamp eligibility without undercutting the purposes of the food stamp program. The foster care payments are for the benefit of the foster children, and the food stamps for the Rios household. Food stamps are unnecessary for the foster children, as their needs are taken care of by the government payments.... Two needs; two programs.

Common sense and logic indicate that the Rios children and the foster care children will sit down at the same table and eat the same food. The children will not be able to discern or distinguish the foster care food from the food stamp food or vice versa. Neither can we. To imply that we can or to make rules on the assumption that we can simply promotes fiction over fact.

Courts should do whatever possible to reduce or eliminate arbitrary and unreasonable classifications such as we have in this case, especially in the absence of clearly expressed congressional intent requiring exclusion of facts. In both the long and the short run, the best interests of all children will be served thereby.

Accordingly, I would remand to the trial court to require the inclusion of both the income and the foster care children for food stamp purposes consistent with this dissent.

I am authorized to state that MILLER, J., joins in this dissent.