Debra MURRAY and Annadine Houle, individually and on behalf of all others similarly situated, Appellees,

v.

Richard E. LYNG, in his capacity as Secretary of the United States Department of Agriculture, Appellant,

Sandra Gardebring, in her capacity as Commissioner of the Minnesota Department of Human Services.

No. 87–5331.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 8, 1988.

Decided Aug. 16, 1988.

Jeffrey Clari, Washington, D.C., for appellant.

James E. Wilkinson, Minneapolis, Minn., for appellees.

Before LAY, Chief Judge, ARNOLD and FAGG, Circuit Judges.

FAGG, Circuit Judge.

The Secretary of the United States Department of Agriculture (the Secretary) appeals from the district court's decision in this class action prohibiting enforcement of certain Department regulations under the Food Stamp Act of 1964, 7 U.S.C. §§ 2011–2029 (the Act). *See Murray v. Lyng,* 667 F.Supp. 668, 675 (D.Minn.1987). The first of the challenged regulations requires that in determining the size and resources of a family applying for food stamps, "[c]hildren under 18 years of age under the parental control of an adult household member" must be counted as members of the food stamp household. 7 C.F.R. § 273.1(a)(2)(i)(B) (1988) (the "household regulation"). The Secretary has enforced this regulation to apply to foster children. The other challenged regulation provides that foster care payments received for children or adults must be included in the unearned income of the food stamp household. 7 C.F.R. § 273.9(b)(2)(ii) (1988) (the "income regulation").

The district court held on cross motions for summary judgment that under the Act, foster children may properly be treated as "boarders" and, thus, may be excluded from the food stamp household. *See Murray,* 667 F.Supp. at 673–75; 7 U.S.C. § 2012(i)(2); 7 C.F.R. § 273.1(c)(1) (1988). On this basis, the district court declared the income regulation as applied to foster care maintenance payments invalid under the Act and granted an injunction in Minnesota against "enforcing regulations that require foster children to be included in food stamp households and foster care maintenance payments to be included in income for purposes of determining food stamp eligibility." *Murray,* 667 F.Supp. at 675. The Secretary challenges both of these holdings on appeal, and we affirm.

Debra Murray, Annadine Houle, and the class of individuals they represent (collectively plaintiffs) are licensed as foster parents by the Minnesota Department of Human Services. As foster parents, plaintiffs receive monthly foster care maintenance payments to cover the cost of food, clothing, shelter, and other miscellaneous expenditures for the needs of foster children placed in their homes. 42 U.S.C. § 675(4).

Under the Act, food stamps are distributed on a household basis. 7 U.S.C. § 2014(a). The aggregate financial resources and the size of a food stamp household determine the household's eligibility and benefit level. *Id.; see id.* § 2012(i). Plaintiffs attack the household and income regulations because these regulations have the effect of reducing a foster family's per-person allotment of food stamps or, in some instances, terminating the family's eligibility completely. Plaintiffs' complaint challenges the regulations on both statutory and constitutional grounds. Because of its decision on the statutory challenge, the district court did not reach plaintiffs' constitutional claims; nor do we.

We first address the household regulation. Whether foster children are included in the food stamp household is not a matter

expressly resolved by the Act. Since the Act's original passage in 1964, the statutory definition of household has undergone a series of changes. *See Foster v. Celani,* 683 F.Supp. 84, 87–89 (D.Vt.1987), *aff'd,* 849 F.2d 91, 92 (2d Cir.1988); *Murray,* 667 F.Supp. at 672–73. Household is presently defined as "[a] group of individuals who live together and customarily purchase food and prepare meals together for home consumption." 7 U.S.C. § 2012(i)(2); *see also* 7 C.F.R. § 273.1(a)(iii) (1988).

Before 1977, foster children were expressly included in the Act's definition of a food stamp household. *See Murray,* 667 F.Supp. at 672. When the Act was amended in 1977, foster children were removed from what remains the current household definition. *See id.* At the same time, Congress excluded persons who "live with others and pay compensation to the others for meals" from the definition of who may constitute a food stamp household. 7 U.S. C. § 2012(i)(2). The House Report accompanying the enactment of this exclusion describes these persons as "boarders." H.R.Rep. 464, 95th Cong., 1st Sess. 143, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1978, 2112–15. In view of Congress' determination that boarders cannot constitute a food stamp household, the Secretary has adopted a regulation providing that "[b]oarders are ineligible to participate in the [food stamp program] independent of the household providing the board." 7 C.F. R. § 273.1(c)(1) (1988). Boarders, however, "may participate as members of the household providing the [board] * * * at such household's request." *Id.* The Secretary contends for a number of reasons that the boarder exclusion does not apply to foster children. We disagree.

An agency is entitled to deference in its interpretation of a statute the agency is charged with administering; however, " 'this deference is constrained by our obligation to honor the clear meaning of a statute as revealed by its language, purpose, and history.' " *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (quoting *International Bhd. of Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct.

790, 799–800, n. 20, 58 L.Ed.2d 808 (1979)); *see also Linquist v. Bowen,* 813 F.2d 884, 890 n. 16 (8th Cir.1987). When we consider an agency's construction of a statute, we must determine initially "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If Congress' intent is clear, we "must give effect to the unambiguously expressed intent of Congress," regardless of the agency's interpretation. *Id.* 467 U.S. at 843, 104 S.Ct. at 2781–82; *see also Abourezk v. Reagan,* 785 F.2d 1043, 1053 (D.C.Cir.1986), *aff'd by an equally divided Court,* —— U.S. ——, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987).

■ We conclude the Act and its legislative history unambiguously embrace foster children within the definition of boarders. Foster children clearly "live with others and pay compensation to the others for meals," 7 U.S.C. § 2012(i)(2), when the household in which they live receives maintenance payments that cover the cost of the foster children's meals and lodging. *See* H.R.Rep. 464, 95th Cong., 1st Sess. 143, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1978, 2113 ("A boarder should be anyone who pays compensation for * * * meals that is reasonable."). We agree with the district court that because the boarder exclusion is applicable to foster children, the Secretary's household regulation may not be enforced to nullify foster children's eligibility for boarder status. *See Murray,* 667 F.Supp. at 673–75. The Second Circuit has reached the same result regarding the applicability of the boarder exclusion to foster children. *See Foster,* 849 F.2d at 92; *see also Rios v. South Dakota Dep't of Social Servs.,* 420 N.W.2d 757, 760–63 (S.D.1988).

■ Having concluded the household regulation may not be enforced against foster children, we must now determine the impact on the food stamp household's income of the children's foster care maintenance payments. The Act defines household income for purposes of the food stamp

program as "all income from whatever source." 7 U.S.C. § 2014(d). This income is subject to a number of exclusions, none of which deals directly with foster care maintenance payments. *See id.* § 2014(d)(1)–(12). The Secretary's income regulation, however, expressly requires the entire amount of these payments to be included in the unearned income of the food stamp household. 7 C.F.R. § 273.9(b)(2)(ii) (1988).

The district court concluded the income regulation was invalid because foster care maintenance payments could be entirely excluded from household income under either of two section 2014(d) exclusions. *Murray*, 667 F.Supp. at 674 & n. 9. The two exclusions relied on by the district court are for moneys received and used for the care of a third-party beneficiary who is not a household member, 7 U.S.C. § 2014(d)(6), and for reimbursed expenses that do not benefit the household, *id.* § 2014(d)(5). The Secretary contends that regardless of these exclusions, if foster children are deemed boarders the payments are income from self-employment and, thus, should not be entirely excluded from household income. *See id.* § 2014(d)(9); 7 C.F.R. § 273.1(c)(5) (1988).

We find it unnecessary to examine the district court's interpretation of the Act's subsection (5) and (6) exclusions. Even when the foster care maintenance payments are classified as advocated by the Secretary (as self-employment income), the regulations implementing the section 2014(d)(9) exclusion permit a result compatible with the district court's decision.

Under the Secretary's regulations, none of the income or resources of boarders who have not been invited to participate as members of the food stamp household providing their board is considered directly available to the household for the purposes of computing the household's food stamp eligibility and benefit level. 7 C.F.R. §§ 273.1(c)(5), 273.11(b)(1) (1988). In light of our decision that foster children qualify as boarders, their foster care maintenance payments cannot be a resource of the food stamp household under this regulation.

Payment of these amounts directly to the foster family rather than to the child does not alter our conclusion. We agree with the *Foster* district court that even though "the money is paid directly to the foster family * * * that money still constitutes the 'income and resources' of the foster child." *Foster*, 683 F.Supp. at 90.

That portion of amounts paid by boarders attributable to meals and lodging, however, is treated under the regulations as self-employment income of the household. 7 C.F.R. § 273.1(c)(5) (1988); *see also id.* § 273.11(b). These regulations are the basis of the *Foster* court's decision that "while a boarder's income is not included in the calculation of food stamp household income," *Foster*, 683 F.Supp. at 89, the portion of a foster care maintenance payment that a boarder pays for lodging and meals is includable by the food stamp household as self-employment income, *id.*, *aff'd*, 849 F.2d at 92. We agree with the *Foster* decision that "the boarder income regulations * * * apply" to foster families. *Foster*, 683 F.Supp. at 90.

Under these regulations, "that portion of the boarder payment which is a cost of doing business" shall be excluded from self-employment income. 7 C.F.R. § 273.11(b)(1)(ii) (1988). Cost of doing business may be measured by "[t]he actual documented cost of providing room and meals." *Id.* § 273.11(b)(1)(ii)(B). In essence, these regulations allow families providing board to exclude from self-employment income the portion of the money paid to them that represents the cost of the lodging and meals. Phrased differently, the regulations are sensibly aimed at requiring families to include only their margin of gain as self-employment income.

By express definition of Congress, foster care maintenance payments cover the costs of food, shelter, and other miscellaneous expenses. 42 U.S.C. § 675(4). The parties do not dispute the foster care maintenance payments received by plaintiffs for meals and lodging provided to the foster children in their care were calculated on a cost basis in conformity with the statute. Thus, when the cost of providing lodging and

meals to the foster children is deducted from the portion of the foster care maintenance payment covering their board, the food stamp family does not realize "net income" under the category of self-employment income received from a boarder. 7 C.F.R. § 273.11(b)(1)(iii) (1988). Consequently, the district court correctly invalidated the Secretary's income regulation that requires foster care maintenance payments to be included in their entirety in the income of a food stamp household.

For the reasons we have discussed, we agree with the district court's conclusions: foster children are boarders under the Act and, thus, are not members of the food stamp household; the household regulation (7 C.F.R. § 273.1(a)(2)(i)(B) (1988)) may not be enforced to deny foster children boarder status; and the income regulation (7 C.F.R. § 273.9(b)(2)(ii) (1988)) is invalid under the Act.

Affirmed.