COMMONWEALTH OF MASSACHU-
SETTS, Plaintiff, Appellant,

v.

Richard E. LYNG, et al.,
Defendants, Appellees.

COMMONWEALTH OF MASSACHU-
SETTS, Plaintiff, Appellee,

v.

Richard E. LYNG, et al.,
Defendants, Appellees,

Coalition For Basic Human Needs,
Plaintiff, Intervenor, Appellant.

Nos. 89–1302, 89–1303.

United States Court of Appeals,
First Circuit.

Heard Oct. 3, 1989.
Decided Jan. 9, 1990.
As Amended Jan. 16, 1990.

Douglas H. Wilkins, Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen. was on brief, for plaintiff, appellant Com. of Mass.

Steven Savner, Massachusetts Law Reform Institute, with whom Patti A. Prunhuber, Western Massachusetts Legal Services, was on brief, for plaintiff, intervenor, appellant Coalition for Basic Human Needs.

Drake Cutini, Atty., U.S. Dept. of Justice, Civ. Div., with whom Stuart E. Schiffer, Acting Asst. Atty. Gen., Wayne A. Budd, U.S. Atty. and Robert S. Greenspan, Atty., Dept. of Justice, Civ. Div., were on brief, for defendants, appellees.

Before BOWNES and TORRUELLA, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

BOWNES, Circuit Judge.

These appeals, from a summary judgment denying declaratory relief sought by the Commonwealth of Massachusetts, involve the treatment, for the purpose of calculating federal food stamp benefits, of a specially appropriated clothing allowance paid by the Commonwealth to recipients of Aid to Families with Dependent Children ("AFDC") or on General Relief ("GR").

The basic matter before us is the district court's decision upholding the agency's interpretation of the pertinent statute that the clothing allowance payments must be included as income of the recipients in determining food stamp benefits.

Appellants are the Commonwealth, on behalf of its Department of Public Welfare, and the Coalition for Basic Human Needs, an organization of welfare recipients committed to improving their economic and social situation. Appellees are Richard E. Lyng in his capacity as Secretary of Agriculture; S. Anna Kondratas, Acting Administrator of the Food and Nutrition Service; and Linda Silva, Regional Director, Family Nutrition Program, Northeast Region.

## FEDERAL STATUTORY AND REGULATORY BACKGROUND

The Food Stamp Program is designed to raise nutrition levels among low-income households by providing needy people with coupons with which to buy food through normal channels of trade. 7 U.S.C. § 2011. Determination of eligibility and calculation of specific benefits depends on household size, income, resources (assets), and compliance with work registration requirements. Participation in the program is limited to those households whose income and other financial resources "are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." 7 U.S.C. § 2014(a).

* Of the Second Circuit, sitting by designation.

The Food Stamp Program is administered at the federal level by the U.S. Department of Agriculture's Food and Nutrition Service (FNS). Each state choosing to participate in the program designates an agency which carries out the state's responsibilities under the Act, including certifying applicant households and issuing monthly benefits to them. 7 U.S.C. §§ 2012(n), 2020(a). The federal government pays for the full cost of food stamp benefits, its own administrative costs, and at least 50% of eligible state administrative expenses. 7 U.S.C. § 2025(a).

The Food Stamp Act of 1977, Pub.L. 95–113, 91 Stat. 962, directed the Secretary of Agriculture to develop a quality control system aimed at reducing errors on the part of state agencies in administering the program. The Act was subsequently amended by Pub.L. 97–253, § 180, 96 Stat. 782 (1982), to establish specific error rate liability targets. At the time this suit was initiated, the error rate target was five percent. 7 U.S.C. § 2025(d)(2)(A) (1982), replaced by Pub.L. 100–435, § 604(2), 102 Stat. 1675 (1988). If a state's error rate exceeded this percentage, the federally-funded share of its administrative costs was reduced. *Id.* A state could appeal payment error rate liability claims filed against it, and seek judicial review of the final determination by the Secretary. 7 U.S.C. § 2023(a), amended by Pub.L. 100–435, § 603, 102 Stat. 1674 (1988). The Secretary could not initiate collection against states for payment errors until after the completion of these procedures. 7 U.S.C. § 2025(d)(6) (1982), as amended by Pub.L. 99–198, § 1537(a)(2) (1985), replaced by Pub.L. 100–435, § 604(2), 102 Stat. 1675 (1988).

The Food Stamp Act defines income for the purpose of calculating benefits as "all income from whatever source." It then specifically excludes eight categories of items from the broad net cast. 7 U.S.C. § 2014(d). One of these categories is:

(8) *moneys received in the form of nonrecurring lump-sum payments,* including, but not limited to, income tax

refunds, rebates, or credits, cash donations based on need that are received from one or more private nonprofit charitable organizations, but not in excess of $300 in the aggregate in a quarter, retroactive lump-sum social security payments or railroad retirement pension payments and retroactive lump-sum insurance settlements: Provided, That such payments shall be counted as resources, unless specifically excluded by other laws. (Emphasis added).

7 U.S.C. § 2014(d)(8).

The regulatory provision implementing the statute reads:

(c) Income Exclusions. Only the following items shall be excluded from household income ... (8) Money received in the form of a nonrecurring lump-sum payment, including, but not limited to, income tax refunds, rebates or credits; retroactive lump-sum social security, SSI, public assistance, railroad retirement benefits, or other payments; lump-sum insurance settlements; or refunds of security deposits on rental property or utilities. These payments shall be counted as resources in the month received, in accordance with § 273.8(c) unless specifically excluded from consideration as a resource by other Federal laws.

7 C.F.R. § 273.9(c)(8).[1] Massachusetts claims that FNS' determination that the clothing allowance is not a nonrecurring lump-sum payment and must be counted as income contravenes these provisions and therefore is incorrect as a matter of law.

### THE MASSACHUSETTS CLOTHING ALLOWANCE

In federal fiscal year 1981, the Massachusetts Legislature authorized funds in its annual budget for a one-time clothing allowance for AFDC recipients, on the condition that the grants would not be counted as income under the food stamp program. Mass.St.1981, c. 351, 4403–2000. Each

year since FY 1981 the Legislature has similarly appropriated available funds. Since FY 1983 the Legislature has also allotted clothing money for GR recipients. The grants, most recently in the amount of $150 per AFDC child and $115 per GR child or adult, have been paid in a lump-sum in September in order to enable recipients to buy clothes at the beginning of the children's school year and prior to the onset of cold weather.

From FY 1981 to 1984, FNS approved Massachusetts' exclusion of the allowance from the calculation of a household's income for the purpose of determining food stamp benefit levels, relying on the nonrecurring lump-sum payment exclusion. In 1984 FNS excluded the payments, but advised that "in the future it [would] be difficult for us to continue considering these payments as nonrecurring because they are becoming an annual issue." The Commonwealth appropriated and distributed clothing allowances again in 1985 and 1986. FNS advised that the 1985 payments would be counted as income but took no action against the Commonwealth. The next year FNS cited Massachusetts for alleged payment errors based, in part, on Massachusetts' exclusion of the allowances from its income calculations for food stamp eligibility.

### PROCEEDINGS BELOW

The Commonwealth appealed its payment error rate for 1986 through the two administrative avenues available to it, arbitration and a good cause waiver request. The arbitration avenue has been exhausted. FNS has not ruled on plaintiff's good cause waiver request for 1986.[2] In May 1987, after requesting arbitration but before filing its good cause waiver request, the Commonwealth filed this action for declaratory judgment. Similar administrative appeals had been initiated by Massachusetts rela-

---

1. 7 C.F.R. § 273.9(c)(8) has been redesignated § 273.9(c)(9) in 53 Fed.Reg. 22292 (June 15, 1988).

2. In 1988 Congress revised certain aspects of the Food Stamp Program's quality control system, retroactive to 1986. Hunger Prevention Act of 1988, Pub.L. No. 100–435, 102 Stat. 1645. FNS has informed the Commonwealth that revised error rates must await appropriate agency rulemaking.

tive to its FY 1987 error rate prior to the time the district court heard this case.

The district court permitted the Coalition and an individual food stamps recipient to intervene. Defendants then moved to dismiss on the grounds that the plaintiffs' claims were not ripe for judicial review and that plaintiffs had not exhausted their administrative remedies. The court denied defendants' motion to dismiss in a published opinion. *Commonwealth of Mass. v. Lyng*, 681 F.Supp. 91 (D.Mass.1988). The parties then filed cross motions for summary judgment. On January 17, 1989, the court granted summary judgment for the defendants. It held that because of the deference due the agency's interpretation of the statute, its ruling that the Massachusetts clothing allowance must be included as income for food stamp recipients should stand. The Commonwealth and the Coalition appeal. They contend that the district court erred as a matter of law in deferring to the Secretary because the intent of Congress was clear as to the applicability of the exclusion and the agency's interpretation is not reasonable.

## JURISDICTION

Appellees (FNS or Secretary) claim that the district court should not have exercised its jurisdiction because appellants (Massachusetts or Commonwealth) have failed to exhaust their administrative remedies. We agree with the district court's determination of the exhaustion issue as explained in its denial of FNS' motion to dismiss which was based on the same grounds. The district court found that "[o]n balance, the need of the Department and intervenors to resolve this dispute outweighs the agency's interest in completing the very last steps of a process which is not meant to address the question of how to define nonrecurring lump-sum payment." *Commonwealth of Mass. v. Lyng*, 681 F.Supp. at 95.

■ As recently summarized by this Court,

The exhaustion of administrative remedies doctrine has long been held to mean that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). This doctrine enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy. *See McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969); *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774 (1st Cir.1981). But, where agency proceedings will be futile, such benefits do not accrue. Therefore the exhaustion doctrine "is not to be applied inflexibly." *McGee v. United States*, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971). (Parallel citations omitted).

*Christopher W. v. Portsmouth School Comm.*, 877 F.2d 1089, 1093–94 (1st Cir. 1989). A court is free to use its discretion, applying the doctrine, or not, in accordance with its purposes. *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774 (1st Cir.1981) (citing cases). "When the various interests served pull in the direction of exhaustion, it is required, but where they pull in different directions, analysis of the particular case at hand is necessary." *Id.* at 775. *See generally*, K. Davis, 4 Administrative Law Treatise, § 26.1 *et seq.* (2d ed. 1983).

■ Our analysis of this case convinces us that it was not necessary for the federal agency to have made a final decision on the Commonwealth's good cause waiver request before the Commonwealth could seek a declaratory judgment. We note first that contrary to FNS' assertion, the scheme of the food stamp statute does not require exhaustion. Section 2023(a) of the Act outlines the procedure for judicial review of specific administrative decisions taken in relation to a state agency (or a retail or wholesale food concern). It neither expressly nor impliedly precludes an action for declaratory judgment concerning interpretation of the federal enabling statute.

Since exhaustion is not statutorily mandated, application of the doctrine was within the discretion of the district court. *Accion Social de Puerto Rico, Inc. v. Viera Perez*, 831 F.2d 365, 369 (1st Cir.1987). As the court below noted, the good cause waiver hearing still pending is "not designed to review the agency's interpretation of the clothing allowance as includable income" but to determine the Commonwealth's liability for payment errors in its administration of the Food Stamp Program. *Commonwealth of Mass. v. Lyng*, 681 F.Supp. at 95. The dispute between Massachusetts and the federal agency transcends the sanctions imposed for 1986 or 1987. The Commonwealth needs to know how to calculate food stamp allotments. Even if Massachusetts' liability for errors in 1986 or 1987 is reduced or eliminated, the Commonwealth risks incurring new liability until the statute's construction is settled.

Furthermore, since determination of Massachusetts' claim involves statutory interpretation and not fact-finding, the agency is not deprived of the opportunity to develop a factual record or to apply its expertise to the problem. The only facts which were arguably in need of further development at the time appellants initiated this action are those concerning the administrative burden to the Commonwealth if the Secretary's interpretation of the statute is upheld, facts which the agency considers immaterial to the controversy. *See* FNS Brief, p. 38, n. 15. Exhaustion is not mandated where the issue is a matter of law as to which specialized administrative understanding plays little role, or where further agency proceedings would be futile. *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d at 774.

For all of these reasons, we agree with the district court that "in this case, review of the statute would not prematurely interrupt the administrative process." *Commonwealth of Mass. v. Lyng*, 681 F.Supp. at 95.

FNS also claims in a footnote that the court has no jurisdiction over the Coalition's appeal because the individual intervenor is not party to this appeal and the

organization has not established a sufficient basis for standing in its own right. We find that the Coalition has satisfied the criteria for standing as an association. *See International Union v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986); *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

### STANDARDS OF REVIEW

Having disposed of the jurisdictional questions, we turn to the applicable standards of review. We begin with the standard of review of a summary judgment. As demonstrated by the parties' cross motions for summary judgment, there are no genuine issues of material fact in dispute. Rather, the question on appeal is whether, as Massachusetts contends, the district court erred as a matter of law. *New England Legal Found. v. Massachusetts Port Auth.*, 883 F.2d 157, 167 (1st Cir.1989). "The standard of review for questions of law decided by a district court is, of course, *de novo* scrutiny, as the conclusions of law of a trial court are not binding on the reviewing court." *Id.*

Our review of the Secretary of Agriculture's interpretation of the Food Stamps Act is governed by the two-step test annunciated by the Supreme Court in *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue.

If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the

statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781 (footnotes omitted).

Thus, in order to determine whether Congress had an actual intent regarding the applicability of the nonrecurring lump-sum payment exclusion to a grant such as the Massachusetts clothing allowance, we examine the statute's language, history and purpose. *Chevron,* 467 U.S. at 843, n. 9, 104 S.Ct. at 2781 n. 9. If analysis of these factors does not reveal clearly the intent of Congress, then the question presented is whether the federal agency's determination that the clothing allowance is not a nonrecurring lump-sum payment "is based on a permissible construction of the statute." *Id.,* at 843, 104 S.Ct. at 2781.

### STATUTORY LANGUAGE

■ The Secretary contends that the phrase "nonrecurring lump-sum payment" does not include the Massachusetts clothing allowance because the allowance has been issued for several years in a row. We think the Secretary's interpretation of the statutory language is correct. "Recurring" means occurring again; "non-" is a combining form meaning "not." The clothing allowances did recur. They were not made just once; they were made annually from 1981 to 1986. The plain language means that only those lump-sum payments which do not occur again may be excluded. Massachusetts tried to avoid the language of the statute by making annual clothing allowance payments by special appropriations rather than a permanent law and by stipulating that the payments would not be counted as income under the food stamp program. Even though FNS went along with this approach through 1984, this did not change the character of the payments from recurring to nonrecurring. FNS told Massachusetts as much in 1984 when it advised the Commonwealth that it would be difficult "to continue considering these payments as nonrecurring because they are becoming an annual issue."

Massachusetts argues with some force that the determination of whether a payment is recurring or nonrecurring should be made from the standpoint of the recipient not the payor. It points out that only 25 to 34 percent of the AFDC recipients who participate in the Food Stamp Program have received a clothing allowance more than one time. This means, however, that the exclusion is not applicable to between one-quarter and one-third of AFDC recipients.

Because the resolution of this question means a lot, not only to the Commonwealth because of the error assessments made, but to individuals in need of food and clothing, we deem it advisable to explore the legislative history.

### LEGISLATIVE HISTORY
### AND PURPOSE

Prior to 1977 decisions concerning the definition of income, deductions and exclusions were made solely by the Executive Branch with only the "guiding statutory principle" that participating households be those "whose income ... is determined to be [a] substantial limiting factor[s] in permitting them to purchase a nutritionally adequate diet." H.R.Rep. No. 464, 95th Cong, 1st Sess. 22, *reprinted in* 1977 U.S. Code Cong. & Admin.News, 1704, 1998, 1998–99. It was according to that guiding principle that the Secretary promulgated the original nonrecurring lump-sum payment exclusion. *See* 7 C.F.R. § 271.3(c)(1)(ii)(e) (1976). Congress incorporated a similar exclusion into the statute in 1977 via the Food Stamps Act of 1977, Pub.L. 95–113, 91 Stat. 962. The foregoing indicates that the Secretary had focused on the income of a household in determining food stamp eligibility and benefits and that Congress approved this approach by enacting into law the nonrecurring lump sum regulation originally promulgated by the Secretary. Nonetheless, it is not clear from the legislative history of the exclusion that the recurring or nonrecurring nature of a lump-sum payment must be deter-

mined from the point of view of the recipient.

The next item of legislative history provides the basis for an additional argument by Massachusetts. The House Agriculture Committee Report on the Food Stamp Act of 1977 focuses on income tax refunds as the prime example of nonrecurring lump-sum payments. *See* H.R.Rep. No. 464 *supra*, 1977 U.S.Code Cong. & Admin.News at 2014. The report describes the "whole cumbersome procedure" of recomputing eligibility and benefits levels in the month a lump sum is received and then returning them to original levels the following month. It states: "[a]ll of this paperwork makes especially little sense since the amounts of money involved in tax refunds that food stamp recipients might get, or in such things as birthday presents, are small." *Id.* at 2014.

According to the Commonwealth, this committee report demonstrates that even an annual grant may qualify for exclusion under the nonrecurring lump-sum payment provision. This is so, it argues, because the primary purpose of the provision is to alleviate the disproportionate administrative burden which would result from inclusion of such sums as income. Massachusetts insists that the characteristics of items excluded by the provision are clear and that the clothing allowance shares those characteristics: it is a relatively small sum, received no more than once a year and in most cases less often; and, if included in the calculation of a food stamp recipient's income, it would pose a significant administrative burden on the Food Stamp offices charged with determining eligibility and benefit levels. We find, however, that Massachusetts is foreclosed from making this argument.

The district court excluded any evidence on the administrative burden that would be imposed on the Commonwealth if the clothing allowance payments were included as income because the Commonwealth "did not present any evidence to the Secretary prior to his making the decision." The Court cited *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), for the rule that the agency's decision must be judged on the basis of information that was before it when it made its decision. We agree with the district court. The only question for the district court was whether agency action was unwarranted on the basis of the facts before the agency. *See Camp v. Pitts*, 411 U.S. 138, 141–42, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973). Massachusetts chose to forego the normal administrative procedure and bring a declaratory judgment action which it alleged presented essentially a question of law. It was on that basis that the district found that Massachusetts did not need to exhaust its administrative remedies. Although the Commonwealth has included in its brief and in the record statistics and facts bearing on the administrative burden argument, we are in no position to determine if in fact the inclusion of the clothing allowance payment will impose an undue administrative burden on the agency.[3] If Massachusetts wanted to challenge the inclusion as imposing an undue administrative burden it should have travelled the whole length of the administrative procedure road without taking the shortcut into court that it did.

Since Congress did not speak directly to the question of whether a specially appropriated state payment to the poor made annually falls within the statutory nonrecurring lump-sum payment exclusion, we must defer to the agency's interpretation if it is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781.

---

**3.** That this is a matter for determination by the agency seems now to be conceded by Massachusetts which stated in its reply brief:

Although none of the parties' initial briefs addressed the point, the *de novo* judicial review for state error rate sanction[s] appears to have been replaced by "review on the administrative record" for fiscal year 1986 and thereafter. P.L. No. 100–435, § 603(2), 701(5)(c). The Commonwealth therefore withdraws its argument that it will be entitled to a *de novo* review under 7 U.S.C. § 2023. This does not mean that the District Court could lawfully ignore the plaintiff's affidavits, however.

Massachusetts Reply Brief, p. 9 n. 5.

## REASONABILITY OF THE AGENCY INTERPRETATION

In determining the reasonability of an agency's interpretation of a statute, this court has analyzed factors such as the existence of precedential authority, basic canons of statutory construction, consistency of earlier and later agency pronouncements, and the practicalities of the situation. *See e.g. Mayburg v. Secretary of Health & Human Services,* 740 F.2d 100, 102–06 (1st Cir.1984) (agency construction unreasonable in light of precedent, statutory language, and anomalous result). Other courts have used these factors in evaluating interpretations of the Food Stamp Act made by the Department of Agriculture. *See Robinson v. Block,* 869 F.2d 202, 213–14 (3rd Cir.1989) (agency's use of a conclusive presumption that siblings who live at the same address "live together" for purposes of the Food Stamp Act was impermissible in light of the language and legislative history of the Act); *Murray v. Lyng,* 854 F.2d 303 (8th Cir. 1988) (agency regulation interpreting statute to require inclusion of foster care payments in household income not valid in light of Act and its legislative history); *Foster v. Celani,* 683 F.Supp. 84 (D.Vt. 1987), *aff'd per curiam,* 849 F.2d 91 (2d Cir.1988) (same); *Blinzinger v. Lyng,* 834 F.2d 618, 622 (7th Cir.1987) (agency construction of provision counting assistance paid to third party as income reasonable because it fits within the ordinary meaning of the words); *Biggs v. Lyng,* 823 F.2d 15, 20 (2d Cir.1987) (agency construction of loan exclusion reasonable because supported by precedent and practicalities of situation).

We find no precedential authority addressing the application of the statutory nonrecurring lump-sum payment exclusion although there are at least two cases involving the pre-existing regulation, *Allen v. Bergland,* 661 F.2d 1001 (4th Cir.1981) and *Dean v. Butz,* 428 F.Supp. 477 (D.Haw. 1977). In *Allen,* a divided court applying a limited standard of review held that the agency's determination that retroactive lump-sum payments from the AFDC program must be counted in the "income" of a recipient also entitled to Food Stamp Program benefits was not plainly erroneous. *Id.* at 1006. The standard of review was limited because under the pre–1977 Food Stamp Act the Secretary had wide discretion to define countable income and because the provision at issue was an agency regulation, not a statutory provision, as here.

Like *Allen, Dean v. Butz* involved the pre–1977 regulation. Unlike the majority in *Allen,* however, the court held that contrary to the agency's determination, state-funded payments made on behalf of AFDC and General Assistance recipients to cover the cost of security deposits required for housing were nonrecurring lump-sum payments excluded from income. *Id.* Neither of these cases is dispositive of this action.

Massachusetts contends that the federal agency's interpretation of the nonrecurring lump-sum payment exclusion is unreasonable because it has been inconsistent. The agency originally excluded the Massachusetts allowances as nonrecurring lump-sum payments; it now includes them on the ground that the payments have been made several years in a row. During the same period of years the agency approved exclusion of the annual dividends of the Alaskan Permanent Fund. It now plans to treat the dividends as income. *See* O'Connor Affidavits, App. 225, 229.

As FNS points out, an agency can change its position on past policy as long as the change is explained. *See N.L.R.B. v. Local Union No. 103,* 434 U.S. 335, 351, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978). "An initial agency interpretation is not instantly carved in stone." *Chevron,* 467 U.S. at 863, 104 S.Ct. at 2781. Furthermore, FNS cites two past instances in which it has ruled that clothing allowances were not nonrecurring lump-sum payments. One of these was a semi-annual payment made by the Bureau of Indian Affairs to tribal children and the other an annual grant made by the state of New Mexico to AFDC recipients. *See* Attachment A to Gov't Mem., App. 203–205; Attachment B to Gov't Mem., App. 206.

We have carefully considered the factors involved. The statutory language weighs in favor of the agency interpretation. The legislative history is inconclusive. We are therefore constrained to uphold the interpretation made by the agency.

*Affirmed.*