**PROFESSIONAL BUILDING CONCEPTS, INC.,**
**Plaintiff,**

v.

**CITY OF CENTRAL FALLS HOUSING AUTHORITY, et al., Defendant.**

**Civ. A. 91–0263B.**

United States District Court,
D. Rhode Island.

Feb. 18, 1992.

Richard Petrocelli, Girard Visconti, Visconti & Petrocelli, Ltd., Providence, R.I., for Professional Bldg. Concepts, Inc.

Charles S. Kirwan, Lovett, Schefrin, Gallogly & Garnett, Providence, R.I., for Promac, Inc.

Michael F. Horan, Pawtucket, R.I., for Central Falls Housing Authority.

Albert DiFiore, Beals & DiFiore, Providence, R.I., for Maron Const. Co., Inc.

Everett Sammartino, Sr. Asst. U.S. Atty., Providence, R.I., for Housing and Urban Development.

OPINION

FRANCIS J. BOYLE, Chief Judge.

Plaintiff Professional Building Concepts, Inc. (PBC) challenges the validity of a contract award to Maron Construction Company, Inc. (Maron) for general improvements to two elderly housing projects in the City of Central Falls. The disputed contract is funded by the United States Department of Housing and Urban Development (HUD). Professional Building Concepts filed this action after the City of Central Falls Housing Authority (Authority) had voted to award the contract to it, but the Authority subsequently rescinded that vote and awarded the contract to the next lowest bidder, Maron, because Professional Building Concepts had failed to submit a certified check with its bid. Plaintiff Intervenor Promac, Inc. (Promac), as the third lowest bidder, argues that Maron's bid is not for a sum certain and should be eliminated, thus, making Promac the lowest responsible bidder.

In February, 1991, the Authority issued an invitation for bids which required the submission of firm, fixed-price, sealed bids prior to 2:00 p.m. on March 19, 1991. Each bid was to be submitted as an overall bid with alternates which, if excluded, would reduce the amount of the bid. The bid invitation documents clearly required the bidders to submit a bid guarantee with each bid. The bid guarantee was to be either a "certified check or bank draft, payable to the [Authority], U.S. Government Bonds, or a satisfactory bid executed by bidder and acceptable sureties in an amount equal to five percent of the bid." Professional Building Concepts submitted its corporate check as its bid guarantee.

At the March 19, 1991, bid opening, Authority and HUD officials recognized the deficiency in Professional Building Concepts' bid guarantee, and after reviewing HUD's manual and specifications, "it was determined that the Authority could allow Professional Building Concepts to submit a proper security within three days." The next day, Professional Building Concepts substituted a certified check in the required amount, five percent of its bid, for its company check.

Present at the bid opening, were the Authority's executive director, HUD representatives, the Authority's Architect—Robinson, Green & Beretta, Corp. (RGB), and the three lowest bidders—Professional Building Concepts, Promac, and Maron. The minutes of the March 19, 1991, meeting indicate that the only observed variance in the bidding process was Professional Building Concepts' submission of an uncertified company check as a bid guarantee.

On March 27, 1991, the Authority determined that it would exclude alternate 1 (painting), and as a result, Professional Building Concepts was the low bidder.[1] By letter dated April 4, 1991, the Authority's architect, Robinson, Green & Beretta, Corp., recommended that the Authority award Professional Building Concepts the contract since it was the low bidder. On April 19, 1991, HUD also informed the Authority, by letter, that it could proceed to award the contract to Professional Building Concepts in the amount of $1,704,000.00 (cost of alternate 1 deducted from overall bid total of $210,000.00).

On April 4, 1991, the three lowest bidders met separately with the Authority. Promac, during its interview, gave the Authority the names of the subcontractors that it proposed to use to perform the contract. Promac asserts, and plaintiff Professional Building Concepts denies, that following the conferences it called Promac's subcontractors and advised them that the Authority was going to delete alternate 1, and award the contract to it. Promac protested this alleged "bid shopping" to the Authority. The Authority held an informal hearing on April 19, 1991, and rejected Promac's protest. Professional Building Concepts was neither notified of, nor did it attend this hearing. On April 23, 1991, Promac learned that the Authority had permitted Professional Building Concepts to substitute a certified check for an uncertified company check after the bid opening. Promac immediately filed a new bid protest advising the Authority and HUD that Professional Building Concepts' bid must be rejected as nonresponsive because it failed to conform to the invitation for bid's (IFB) guarantee requirements.

The Authority met on April 23, 1991, and unanimously voted to award the contract to Professional Building Concepts with the deletion of alternate 1. Although the minutes of the meeting are not totally clear, it appears the Authority voted that "Notice of Award would not be signed until the Authority's Legal Council (sic) further reviewed the situation and issues involved." The Authority's legal counsel did review the situation and advised the Authority by letter dated April 30, 1991, that although a "borderline" situation, "... Professional

---

1. Bids submitted by the three low bidders were as follows:

| Contractor | Base Bid | Alternate 1 | Base Bid minus Alt. 1 |
|------------|----------|-------------|------------------------|
| PBC | $1,914,000.00 | $210,000.00 | $1,704,000.00 |
| Maron | $1,897,800.00 | $165,000.00 | $1,732,500.00 |
| Promac | $1,892,000.00 | $149,000.00 | $1,743,000.00 |

Building Concepts' failure to file a qualified bid guarantee, as required by the IFB, constitutes a material defect, which requires a rejection of its bid for failure to comply with a material term and condition." Thereafter, the Authority met on May 8, 1991, and rescinded its vote of April 23, 1991, and elected to award the contract to Maron.

To add to this dispute, Promac contends that Maron's bid is also unresponsive because Maron added an extra line item to its bid document which provided for a unit price of $100.00 per square foot for concrete repair work. Promac contends that this addition rendered Maron's bid uncertain since Maron did not include the cost of the concrete repair work in its base bid nor did it provide a basis for determining this cost. The Authority and Maron, however, agree that this addition relates to note 12 of the plans which states:

> 12. Inspect entire building for damaged stucco areas. Identify all areas requiring concrete repair. Repair will be accomplished under square foot unit prices, see specifications.

Additionally, section 03732, entitled "Concert Repair", of the specification delineates how a contractor is to accomplish the required concrete repair work.

Paragraph 7 of the Authority's Form of Bid required unit prices for "ADDITIONAL OR DEDUCTIVE WORK" from bidders with respect to "(1) the price per square foot for re-pointing additional cracks; (2) the price per square foot for repair of damaged areas of stucco finish; (3) the unit price for the removal and repair of individual bricks; and (4) the price per linear foot for the addition of new floor tile." Of the eight bids received, only Maron's bid included a fifth line item in addition to the four line items required by paragraph 7 of the IFB.

On May 8, 1991, the Authority voted to award the contract to Maron. Promac informed the Authority that it would seek judicial review of this decision. Rather than address the merits of Promac's challenge to the responsiveness of Maron's bid, the Authority chose to reject Promac's challenge as being untimely filed. The Authority, however, has not adopted any formal bid protest procedures as required by the HUD regulations, nor has it provided Promac with any guidelines relating to its protest filing procedures.

Professional Building Concepts argues that the Authority improperly rejected its bid and now seeks to enjoin the award of the contract to Maron. Promac has intervened as a party plaintiff arguing that the Authority properly rejected Professional Building Concepts' bid, and it also seeks to enjoin the award of the contract to Maron.

## DISCUSSION

### A. *Jurisdiction*

■ This court has jurisdiction to review and set aside federal agency action, "findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1977). Exhaustion of administrative remedies is not required where the complaint presents fundamental legal questions which are capable of resolution by judicial determination without the need for agency expertise. *Massachusetts v. Lyng*, 893 F.2d 424, 428 (1st Cir.1990). The questions presented in this case are capable of resolution without deference to agency expertise. Based on *Lyng*, this court has jurisdiction to hear Professional Building Concepts' claims even though it never sought relief from the Authority. This court also has jurisdiction to hear Promac's claims since Promac has exhausted, or has attempted to exhaust, its administrative remedies. *Id.*

Both Professional Building Concepts and Promac seek that this court enjoin the Authority from awarding the contract to Maron. To determine whether to grant injunctive relief, the court must weigh the following factors: (1) whether there is a likelihood that the plaintiffs will succeed on the merits; (2) whether the plaintiffs will suffer irreparable injury if the injunctive relief is not granted; (3) whether the threatened injury to the plaintiffs outweighs the harm to the defendant and other third parties; and (4) whether granting the relief is in the public interest. *Narragansett Indian*

**1562**

*Tribe v. Guilbert,* 934 F.2d 4, 7 (1st Cir. 1991).

### B. *Rejection of Professional Building Concepts' Bid*

In considering Professional Building Concepts' claim for injunctive relief, the court must first address whether there is a likelihood that it will succeed on the merits. *See Narragansett Indian Tribe,* 934 F.2d at 6 (likelihood of success is a critical element). The question is whether submission of a corporate check as a bid guarantee rather than a certified check as required by the IFB constitutes a material noncompliance in the bidding process. Federal Acquisition Regulations (FAR) provide that in "sealed bidding, noncompliance with a solicitation requirement for a bid guarantee requires rejection of a bid," except in certain limited situations which are not applicable to this case. *See RADVA Corporation v. United States,* 17 Cl.Ct. 812 (1989), *aff'd,* 914 F.2d 271 (Fed.Cir.1990) (quoting 48 C.F.R. 28.101-4). The regulations further state that "failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of the bids, may be cause for rejection of the bid." 48 C.F.R. 52.228-1 (1990).

Professional Building Concepts argues that submission of its company check amounted to an informality in the bidding process which could be waived at the Authority's discretion. The materiality of a bid guarantee requirement is governed by HUD procurement regulations which must be read in conjunction with the Federal Acquisition Regulations. 48 C.F.R. § 1.101 (1990). The Federal Acquisition Regulations establish a uniform system of policies and procedures for acquisitions by all executive agencies. This uniform system consists of federal acquisition regulations and all pertinent agency regulations. 48 C.F.R. § 1.101 (1990).

There are no reported cases interpreting the Federal Acquisition Regulations or the Hud Regulations with respect to the significance of a bid guarantee. Decisions of the Comptroller General, although not controlling, are instructive on this issue. *Keco Industries, Inc. v. Laird,* 318 F.Supp. 1361, 1363 (D.D.C.1970). Beginning in 1959, the approach of the Comptroller General has been that "where an invitation for bids requires a bid to be supported by a bid guarantee and noncompliance occurs, the bid shall be rejected." *See, e.g., In re Castle Floor Covering,* 70 Comp.Gen., B-242718, 91-1 CPD 510 (1991); *In re Hudgins & Company, Inc.,* 56 Comp.Gen. 43, B-187008, 76-2 (1976); 38 Comp.Gen. 532, B-137319 (1959). The Comptroller reasons that "the submission of a binding bid guarantee is a material condition of responsiveness with which a bid must comply at the time of bid opening". *In re Castle Floor Covering,* 70 Comp.Gen., B-242718, 91-1 CPD 510 (1991); *see also* 48 C.F.R. 52.228-1 (1990). The Comptroller has cogently observed that deficiencies in "bid guarantees may not be cured after bid opening due to the prejudice that might result to other bidders from the unfair advantage accruing to a bidder who could elect, after bid opening," not to comply with the bid guarantee requirements. *In re Edward D. Griffith,* B-188978, 77-2 CPD 155 (1977). Professional Building Concepts could have chosen, with impunity, not to comply with the bid guarantee requirement. Additionally, allowing Professional Building Concepts to submit a proper bid guarantee after the bid opening gave it the unfair opportunity to view the bids of the other seven competitors before making a firm commitment to perform the contract. This certainly is not competitive bidding as envisioned by the Federal Acquisition Regulations.

Professional Building Concepts relies on *P. Michelotti & Sons, Inc. v. Fair Lawn,* 56 N.J.Super. 199, 152 A.2d 369 (1959), as support for its proposition that noncompliance with a bid guarantee requirement is a minor informality that can be corrected after bid opening. *Michelotti,* however, does not consider the inherent unfairness in allowing a bidder, after the opening, to cure a defect in its bid because the bidder is given the opportunity to view the proposals of its competitors before making a firm commitment to perform the contract.

Further, *Michelotti* does not consider the advantages to a nonconforming bidder. During the period of noncompliance, the

government has no way to require performance from the defective bidder should this bidder decide not to bring its bid into compliance with bid guarantee requirements. A binding bid guarantee at a minimum assures the government monetary restitution in cases where the lowest responsible bidder fails to perform.

The purpose of a bid guarantee is to provide assurances, in the form of a firm commitment, that the bidder will, if successful, perform the contract. An uncertified company check is not a firm commitment. It could be rejected by the bank because of insufficient funds or the bidder could simply stop payment.

Professional Building Concepts also argues that there was no defect in its bid guarantee since HUD Regulations, 24 C.F.R. section 85.36(h)(1) (1991), specify that in addition to a bid bond or a certified check a bid guarantee may take the form of any *other negotiable instrument* (emphasis added). It maintains that its company check satisfies the "other negotiable instrument" requirement. The IFB clearly called for submission of at least a certified check as a bid guarantee. Unless ambiguous, it is the language of the IFB which controls the form that a bid guarantee must take.

Professional Building Concepts' failure to comply with the bid guarantee requirement is not an informality which could be waived by the Authority. According to the Federal Acquisition Regulations "[a] minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders." 48 C.F.R. 14.405 (1990).

Typically defects in bid reply documents such as failure to sign the bid, failure to execute required certificates, and failure to return the required number of copies have been classified as minor informalities. 48 C.F.R. 14.405 (1990); *See also Excavation Construction, Inc. v. United States*, 494 F.2d 1289, 1293 (Ct.Cl.1974) (submission of bid bond with incorrect job number deemed

a minor informality). The defect in this instance goes far beyond a mere informality and runs to the very core of the sealed bidding process which intended is to bind the low responsive bidder at the time of bid opening to perform the contract. Professional Building Concepts deliberately failed to comply with the terms of the invitation for bids, and at the time of bid opening, it was not obligated to perform the contract even though it was the low bidder.

Because a bid guarantee provides a mechanism for securing a bidder's performance, logic dictates that it is a material element of the Invitation for Bids. Compliance with the bid guarantee provision is necessary in order for the bid to be responsive. 48 C.F.R. 14.301 (1990). Since Professional Building Concepts' bid is clearly not in compliance with the bid guarantee requirement, the Authority properly rejected it as nonresponsive. It is simply of no consequence that the Authority delayed several weeks before it finally rejected Professional Building Concepts' bid. The Authority is entitled to have time to make a determination.

■ Finally, Professional Building Concepts argues that the Authority has already accepted its bid and awarded it the contract, thereby, precluding the Authority from now rejecting its bid. Professional Building Concepts contends that the Authority actually awarded it the contract due to the vote taken at the Authority's April 23, 1991, meeting. HUD regulations specifically state that a firm, fixed-priced contract shall be awarded upon written notification to the lowest "responsive and responsible bidder." HUD Regulations, 24 C.F.R. § 85.36(d)(2)(D) (1991). Professional Building Concepts was not given written notification from the Authority that it was being awarded the contract in question. Without written notification of award, the contract was never awarded to it.

The Authority's decision to reject Professional Building Concepts' bid was not arbitrary, capricious or in any other way in violation of the law. It was correct. Thus, this court has no authority to set-aside the agency's determination that Professional

Building Concepts' bid was nonresponsive. Professional Building Concepts has no basis for injunctive relief.

### C. *Responsiveness of Maron's Bid*

Next, Promac argues that it is entitled to declarative and injunctive relief preventing award of the contract to Maron because Maron's bid was nonresponsive. Maron's bid included an extra line item for concrete repair work at $100.00 per square foot.

The IFB included the drawings as part of the bid documents. Item 5 of the Bid Package Instruction sheet cautioned bidders to pay particular attention to "specifications, general conditions, and special conditions...." The instruction package, hence, required bidders to include as part of their bid all items referred to by the instructions or conditions in the drawings and specifications. The special instructions included "General Notes" on the drawings for the North and South Elevations of Wilfrid Manor. General Notes, item 12 states:

> Inspect entire building for damaged stucco areas. Identify areas requiring concrete repair. Repair will be accomplished under *square foot unit prices,* see specifications. (emphasis added)

According to General Notes, item 12, Maron stated in its bid a unit price for concrete repair. These drawings specifically call for a unit price for concrete repair rather than a firm, fixed-price. Maron was the only bidder correct in following the special instructions contained in these drawings. Its bid was not nonresponsive since it complied with these instruction.

As Maron's bid was responsive to the bid documents, the Authority must award the bid to Maron as the actual lowest responsible bidder. Promac is not entitled to injunctive relief preventing the Authority from awarding the contract to Maron. Judgment will enter for Maron Construction Company, Inc.