**Monica HAMILTON; Laura Stroy; Wanda Valeck individually, and on behalf of all similarly situated persons, Plaintiffs–Appellees,**

**v.**

**Edward MADIGAN \*, in his official capacity as Secretary, United States Department of Agriculture, Defendant–Appellant.**

**No. 90–16114.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 1991.

Decided April 10, 1992.

---

\* Pursuant to Fed.R.App.P. 43(c)(1), Edward Madigan is substituted for Clayton Yeutter, his predecessor as Secretary.

Raymond W. Fullerton and John B. Koch, Office of the General Counsel, U.S. Dept. of Agr., Washington, D.C., for defendant-appellant.

Melinda R. Bird, Western Center on Law and Poverty, Los Angeles, Cal., Carole Grossman, Legal Services of Northern California, Sacramento, Cal., for plaintiffs-appellees.

William W. Vaughn and Bruce G. Iwasaki, O'Melveny & Myers, Los Angeles, Cal., for amicus curiae Nat. Coalition for the Homeless.

Before: CHAMBERS, NORRIS, and THOMPSON, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

California provides two forms of emergency housing payments to homeless families. *See* Cal.Welf. & Inst.Code § 11450(f)(2).[1] While looking for permanent housing, a homeless family may receive $30 a day for temporary shelter for not more than 28 consecutive days ("temporary housing assistance"). *Id.* at (f)(2)(A). Once a homeless family locates permanent housing, it may receive money for a security deposit, the last month's rent, and a utility deposit ("permanent housing assistance"). *Id.* at (f)(2)(B), (C). Once a homeless family receives either temporary or permanent housing assistance, it becomes ineligible for them for 12 months. Cal. Welf. & Inst.Code § 11450(f)(2)(E).[2]

This case presents the question whether California's emergency housing payments to the homeless are "nonrecurring lump-sum payments" which are excluded from a homeless family's income for the purpose of determining its eligibility for food stamps under the federal food stamp program. To resolve this question we must interpret the following language in the Food Stamp Act:

> Household income for purposes of the food stamp program shall include all income from whatever source excluding only ... (8) moneys received in the form of nonrecurring lump-sum payments, including, but not limited to income tax refunds, rebates, or credits, cash donations based on need that are received from one or more private nonprofit charitable organizations, but not in excess of $300 in the aggregate in a quarter, retroactive lump-sum social security or railroad retirement pension payments and retroactive lump-sum insurance settlements: *Provided,* that such payments shall be counted as resources, unless specifically excluded by other laws.

7 U.S.C. § 2014(d)(8).

Appellees brought this class action seeking to require the Secretary of Agriculture

---

1. "A family is considered homeless ... when the family lacks a fixed and regular nighttime residence; or the family has a primary nighttime residence that is a supervised publicly or privately operated shelter designed to provide temporary living accommodation; or the family is residing in a public or private place not designed for, or ordinarily used as, a regular sleeping accommodation for human beings." Cal.Welf. & Inst.Code § 11450(f)(2).

2. Subsequent to the district court order, California amended the statute by limiting eligibility for emergency housing payments to those who were homeless and had received no such payments in the past *two* years and by reducing the maximum period of daily shelter payments from 28 days to 16 days. Senate Bill 724, Cal. Stats. 1991, ch. 97, § 6. The change in such requirements does not affect our analysis. For narrative convenience only, we refer to the original eligibility requirements.

to exclude California's emergency housing payments from the income of homeless families in determining their eligibility for food stamps. The district court awarded summary judgment to the appellees and ordered declaratory and injunctive relief. The Secretary appeals. We affirm.

# I

▮ The district court ruled that California's emergency housing payments be excluded from the income of homeless families applying for food stamps because they qualify as "nonrecurring lump-sum payments" under the plain meaning of the Food Stamp Act. Accordingly, the district court reasoned, the Secretary's contrary interpretation of the statute was not entitled to deference under *Chevron, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[3]

We agree with the district court that California's emergency housing payments qualify as "nonrecurring lump-sum payments" under the plain meaning of the statute. As the district court pointed out, the plain meaning of "recurring" is indefinite repetition on a regular basis. California's emergency housing payments to homeless families do not repeat on a regular basis. The fact that a family has received payments does not entitle it to receive them again. The family may receive payments again only if it finds itself in a an emergency state of homelessness more than 12 months after having received such payments. As the district court said, the payments do not repeat indefinitely on a regular basis because they are "one-time only payment[s] made to help families who find themselves in an emergency situation," *see* Excerpts of Record at 60.

The Secretary's argument that the language "nonrecurring lump-sum payments" does not include payments that are *capable* of recurring is inconsistent with the statutory examples. *See* 7 U.S.C. § 2014(d)(8). Income tax refunds, cash donations from a charity, and insurance payments are statutory examples that are *capable* of recurring. Insurance payments, for example, are capable of recurring if a family suffers another insured loss. Similarly, income tax refunds and cash donations from charity are *capable* of recurring. Thus the fact that the California emergency homeless payments are capable of recurring does not, as the Secretary argues, take them outside the meaning of "nonrecurring lump-sum payments." The Secretary's interpretation conflicts with the basic canon of statutory construction that when general and specific words are associated, as in the statutory definition of nonrecurring lump-sum payments and the accompanying list of examples, then the general words are construed to embrace things similar to those enumerated by the specific words. *See White Memorial Medical Center v. Schweiker,* 640 F.2d 1126, 1129 (9th Cir. 1981).[4]

---

3. In *Chevron,* the Court adopted the following two-step test for determining whether an agency's construction of a statute which it administers is entitled to deference:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. In determining if Congress has "an intention on the precise question at issue," we employ "traditional tools of statutory construction." *Id.* at 843 n. 9, 104 S.Ct. at 2781–82 n. 9. In so doing, we do not defer to agency interpretations since "the judiciary is the final authority on issues of statutory construction." *INS v. Cardozo–Fonseca,* 480 U.S. 421, 447, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1986) (quoting *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781–82 n. 9).

4. The Secretary's argument that the homeless assistance is distinguishable from the other examples because they are "public assistance payment[s] based on current need," Brief of Appellant at 14, manufactures a distinction nowhere present in the statute itself. Had Congress intended such a distinction, it could easily have drafted the statute to include one set of examples for public assistance programs based on current need and another set of examples for other payments.

## II

The Secretary's reliance on *Massachusetts v. Lyng*, 893 F.2d 424 (1st Cir.1990), is misplaced because the benefits there are readily distinguishable. At issue there were Massachusetts's annual subsidies for clothing to all AFDC and General Relief recipients.[5] California's emergency housing payments and Massachusetts's annual clothing subsidies serve fundamentally different purposes. California's emergency housing payments aim to eliminate a family's need for such benefits in the future by lifting it out of an emergency state of homelessness. In contrast, Massachusetts's housing subsidy aims to supplement a family's annual budget for clothing on an ongoing basis as long as the family is eligible for AFDC payments. The Massachusetts clothing subsidy is *not* designed to help get families out of their state of dependency on welfare, but to assist them as long as they are on welfare.

## III

■ We reject the Secretary's argument, raised for the first time on appeal,[6] that the temporary shelter payments, as distinguished from the permanent housing payments, do not qualify for exclusion because they are not "lump-sum" payments. The Secretary argues, in essence, that a payment is not "lump-sum" if it is disbursed in a number of installments. The Secretary's interpretation is inconsistent with a statutory example of a nonrecurring lump-sum payment: the statute states that charitable contributions are nonrecurring lump-sum payments if they are "from one or more private nonprofit charitable organizations, but not in excess of $300 in the aggregate in a quarter," 7 U.S.C. § 2014(d)(8). Had Congress intended to limit the nonrecurring lump-sum payment provision to payments that are disbursed in a single payment, then it would not have included the charitable donation example, which clearly foresees the aggregation of several disbursements. Moreover, had Congress intended such a limitation, it would have used the phrase "single payment" rather than "lump-sum." Finally, the Secretary's interpretation is inconsistent with the dictionary definition of "sum" which contemplates an "aggregate" and "adding numbers," Webster's Ninth New Collegiate Dictionary 1181 (1983). *See Chapman v. United States*, — U.S. —, 111 S.Ct. 1919, 1925–26, 114 L.Ed.2d 524 (1991) (using dictionary definitions to define statutory references to "mixture" and "substance"). If the provision were limited to single payments, there would be no need for such aggregating or adding.

---

The Secretary's argument that he should have discretion to include some nonrecurring lump-sum payments in income if they are not specific statutory examples is also unfounded in the statutory language. 7 U.S.C. 2014(d) defines income and then states "excluding only...." before listing nonrecurring lump-sum payments. The statute also introduces the examples of nonrecurring lump-sum payments with the phrase "including, but not limited to." *Id.* It makes no reference to any discretion for the Secretary to "pick and choose" between the types of lump-sum payments that may be included.

Finally, the Secretary's reliance on *Knebel v. Hein*, 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1976), is misplaced because that case did not involve a specific exemption, such as nonrecurring lump-sum payments. The statute then provided that the Secretary would "prescribe the amounts of household income ... to be used as criteria of eligibility," 7 U.S.C. § 2014(b) (1970 Ed.Supp. V), *quoted in* 429 U.S. at 292, 97 S.Ct. at 552. The plaintiff there did not point to any specific statutory source of exclusion analogous to the nonrecurring lump-sum provision at issue here.

5. Massachusetts first authorized a one-time clothing allowance for all persons receiving AFDC or General Relief in 1981 and received permission from the Secretary to exclude the allowance from income. 893 F.2d at 426. The legislature authorized the clothing allowance by statutes enacted each year through 1984, and the Secretary allowed the same treatment. *Id.* The Secretary advised Massachusetts in 1985 that the clothing allowance could no longer be excluded from income because "they are becoming an annual issue." *Id.*

6. We have discretion to consider an issue raised for the first time on appeal if the issue "is purely one of law and either does not affect or rely upon the factual record developed by the parties." *Telco Leasing, Inc. v. Transwestern Title Co.*, 630 F.2d 691, 693 (9th Cir.1980) (quoting *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir.1978)).

## IV

In sum, we hold that the plain meaning of the nonrecurring lump-sum provision of the Food Stamp Act requires exclusion of both the daily shelter payments and deposit payments from income for the purpose of calculating food stamp eligibility.

AFFIRMED.